## LANDAU v. UNITED STATES ATTORNEY FOR SOUTHERN DISTRICT OF NEW YORK.*

No. 183.

Circuit Court of Appeals, Second Circuit.

Feb. 10, 1936.

Louis A. Schenfield, of New York City (David P. Siegel, A. I. Eibel, and Samuel Hassen, all of New York City, of counsel), for appellant.

Lamar Hardy, U. S. Atty., of New York City (Joseph P. Martin, Asst. U. S. Atty., and Richard J. Burke, Sp. Asst.

*Certiorari denied 56 S. Ct. 747, 80 L. Ed. —.

U. S. Atty., both of New York City, of counsel), for appellee.

Before MANTON, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

MANTON, Circuit Judge.

Appellant, a citizen of the United States, returned from abroad June 25, 1935, and when he disembarked his baggage, consisting of a trunk and a brief case, were searched by the customs agents. The agents had confidential information that he was involved in an attempt to smuggle in Swiss watch movements. The trunk was examined and found to contain a false compartment constructed for the purpose of concealing smuggled goods. Thereupon, the appellant and his trunk and brief case were taken to the customs house for further examination. While a passenger in a taxicab en route, he removed from the brief case the memorandum here in question and placed it in his inside pocket. The agent took the memorandum from him and found it to contain a list of watch movements showing their size, number of jewels, and the manufacturers' names in appellant's handwriting. The appellant finally admitted that this memorandum represented a description of watches he had intended to smuggle into the country and for that purpose he had had his trunk specially constructed, which statement was at variance with other explanations he had previously given of both the memorandum and the trunk. On July 9, 1935, a large quantity of smuggled Swiss watches were found on the person of a member of the crew of the steamship on which the appellant crossed to this country. These watches corresponded identically with the description of the memorandum taken from the person of the appellant on June 25, 1935, as to sizes, jewels, name of manufacture, and the watch movements were of the size and character to fit into the false compartment found in the trunk of the appellant. The outer wrappings of the packages containing the watch movements were in script in the handwriting of the appellant, and the person found in possession of the watches stated that they were delivered to him by the appellant on June 25, 1935, on board the steamship prior to her arrival at the port of New York, for delivery to his son. Thereafter, appellant and the crew member were arrested charged with smuggling and conspiracy to smuggle the watches into this country.

This special proceeding was instituted, before indictment of the appellant, to have the memorandum, taken from his person, returned to him and to suppress as evidence all information obtained by its use. He claims that its retention and the search resulting in its seizure violated rights accorded to him by the Fourth and Fifth Amendments of the Constitution.

■ The appellee argues that the search was justified within 19 U.S.C.A. § 482, and section 582 of the Tariff Act of June 17, 1930, c. 497, title 4, § 582 (46 Stat. 748, 19 U.S.C.A. § 1582), and that there was a right to seize the memorandum as an instrumentality of crime.

As early as 1799, the baggage of one entering the country was subject to inspection (1 Stat. 662). The necessity of enforcing the customs laws has always restricted the rights of privacy of those engaged in crossing the international boundary. See Carroll v. United States, 267 U.S. 132, 154, 45 S.Ct. 280, 69 L.Ed. 543, 39 A.L.R. 790. Neither a warrant nor an arrest is needed to authorize a search in these circumstances. In the instant case, there was no disturbance of the appellant, his residence, or his effects after a completed entry. It was to these evils that the Fourth Amendment was directed. Boyd v. United States, 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746. It has been said: "Whatever the casuistry of border cases, it is broadly a totally different thing to search a man's pockets and use against him what they contain, from ransacking his house for everything which may incriminate him." See United States v. Kirschenblatt, 16 F.(2d) 202, 203, 51 A.L.R. 416 (C.C.A.2). Although inspection of the person and baggage upon entry may be carried so far, or be so conducted, as to constitute an unreasonable search, it is clear that such is not this case.

■ The search which customs agents are authorized to conduct upon entry is of the broadest possible character and any evidence received might be used. There is no danger here that the availability of mere documentary evidence for use at the trial or for the purposes of detection would tempt the inspectors to exceed permissible limits in their search. Cf. United States v. Poller, 43 F.(2d) 911, 914, 74 A.L.R. 1382 (C.C.A.2).

However, the right of seizure is not necessarily coextensive with the right of inspection. See United States v. Kraus, 270 F. 578, 581 (D.C.S.D.N.Y.). If the appellant had been lawfully arrested at the time of the search, it is very clear that the memorandum, whether taken from his pocket or his brief case, could be retained and used at his trial, although merely evidence of the crime. Weeks v. United States, 232 U.S. 383, 392, 34 S.Ct. 341, 58 L.Ed. 652; Lefkowitz v. U. S. Attorney, 52 F.(2d) 52 (C.C.A.2), affirmed 285 U.S. 452, 52 S.Ct. 420, 76 L.Ed. 877, 82 A.L.R. 775; United States v. Kirschenblatt, 16 F.(2d) 202, 51 A.L.R. 416 (C.C.A.2); United States v. Kraus, supra. But here, although the search was lawful, there was no arrest at the time the seizure was made. It is unnecessary to determine in this case whether documents constituting merely evidence may be seized when they are discovered in the course of a customs search of an entrant's person and baggage. The right to retain the paper here may be placed on its classification as an instrumentality of crime. The appellee's suggestion that the officers merely waived their right to arrest appellant at the time of seizure is unimpressive. If that were so, it could be too easily extended to cover every search that was followed by an arrest.

The memorandum seized here constituted an exact tabulation of the smuggled merchandise. Some such list was a necessity in this type of smuggling to be sure that the actual carrier turned over all the goods. If papers can ever be an instrumentality of crime, when not constituting the essence of the crime itself, they are such here. In Marron v. United States, 275 U.S. 192, 48 S.Ct. 74, 72 L.Ed. 231, the Supreme Court held that it was not unreasonable to find that ledgers and bills were used to carry on the business of maintaining a nuisance, to wit, a speakeasy, and that they could be seized on a search of the premises incidental to a lawful arrest. Go-Bart Importing Co. v. United States, 282 U.S. 344, 51 S.Ct. 153, 75 L.Ed. 374, did not limit this doctrine that documents can sometimes be seized as part of the equipment actually used in the commission of a crime. The case merely sets a limit on the extent to which the arresting officers may go in searching without a warrant the premises where an arrest occurs. In United States v. Lefkowitz, 285 U.S. 452, 52 S.Ct. 420, 76 L.Ed. 877, 82 A.L.R. 775, there was a similar general search of the premises and the seizure of a mass of documents, innocent in themselves and sought only as evidence. The government tried to justify the seizure and search as incidental to the arrest. The court did not overrule the Marron Case, but held only that the particular documents in question were merely evidence and could not be considered the means of crime subject to comprehensive search and seizure as such. The papers there considered were of a much more general type than the list of contraband seized here. This list was a necessary part of the scheme to smuggle in the watches and falls well within those cases classing documents as the instrumentality or means of carrying on a crime. In Foley v. United States, 64 F.(2d) 1 (C.C.A.5), records required in carrying on a bootlegging business were held subject to seizure in a dwelling when discovered in the course of a search under a warrant describing them. United States v. Poller, 43 F.(2d) 911, 74 A.L.R. 1382 (C.C.A.2), held that certain records and papers in connection with an attempt to enter goods into the United States by means of false documents could be seized upon the owner's arrest, as the instrumentalities of continuing the unlawful business. In United States v. Kraus, supra, it was recognized that records which should have been kept in certain books, but were not (the failure constituting a felony), might be seized under a search warrant as the means convenient and necessary for the commission of the crime of not keeping proper books.

A close case, holding immune from search and seizure documents classed as mere evidence, nevertheless recognized that papers as such have no special sanctity and may on occasion be subject to seizure as the instruments of crime. Gouled v. United States, 255 U.S. 298, 41 S.Ct. 261, 65 L.Ed. 647. United States v. Kirschenblatt, 16 F.(2d) 202, 51 A.L.R. 416 (C.C.A.2), in so far as it would have excluded records necessary to the crime as instrumentalities of the crime must be deemed to have been limited by the Marron Case, supra.

The search of the appellant and his baggage on entering the country was valid and not in violation of the Fourth Amendment. The documentary evidence obtained under such a search could prop-

288

erly be used by the customs agents and these documents may be retained after seizure as instrumentalities of crime.

The affidavits before the court below were sufficient to base a determination that the search was made pursuant to law. It was not necessary to examine witnesses. The consent of the appellant to relinquish the property seized became immaterial.

Order affirmed.