Sergio Ruvalcaba **RAMIREZ**, Appellant,

v.

**UNITED STATES of America,**
Appellee.

No. 17434.

United States Court of Appeals
Fifth Circuit.

Feb. 18, 1959.

Rehearing Denied April 15, 1959.

---

6. Moore v. Cleveland Ry. Co., 6 Cir., 108 F.2d 656; Associated Mutuals v. De- laney, 1 Cir., 176 F.2d 179, 11 A.L.R. 2d 896.

Brian S. Odem, Asst. U. S. Atty., Brownsville, Tex., William B. Butler, U. S. Atty., Houston, Tex., for appellee.

Before HUTCHESON, Chief Judge, and BROWN and WISDOM, Circuit Judges.

## PER CURIAM.

Defendant-appellant was indicted for, and convicted on a trial before the court without a jury of, violating Sec. 4744(a)(2), Title 26, in that he transported and concealed approximately 24 pounds of marihuana without having paid the transfer tax.

Appealing from the judgment and sentence, he is here presenting a single question for decision. This is whether his motion to suppress and exclude evidence, of the marihuana and the circumstances of the seizure, as the product of an unreasonable and therefore a forbidden search and seizure, was incorrectly denied.

After a full hearing, the evidence on which was briefly but correctly summarized [1] by him, the district judge,

Hector Yznaga, Brownsville, Tex., for appellant.

[1] Immigration Border Patrol inspectors, who also were authorized to act as Customs officers, established a checking point on U. S. Highway 281, about four miles south of Fulfurrias and about 75 miles north of the Rio Grande River. Two main highways lead out of the Rio Grande Valley north and away from the border and ports of entry; (1) U. S. Highway 281, leading due north from Hidalgo, Texas, via Pharr and Edinburg; and (2) U. S. Highway 77, leading north out of Brownsville via Harlingen. Any other routes are generally through ranch country, fenced and locked. By the establishment of these checking points as far north as the one in question the immigration authorities have intercepted many aliens and apprehended many others engaged in smuggling activities.

The checking point in question had a red blinker light flashing off and on with signs reading: "Slow—Slow—Stop Ahead."

On the night of May 31, 1958, at about 10:00 p.m., the three defendants approached the checking station in a 1955 sedan. They were questioned as to their citizenship and presented documents showing them to be resident aliens. (Defendants Ramirez and Zamora are Mexican nationals; defendant Garido is a Cuban.) They appeared to be very nervous and Ramirez answered nearly every question with the statement: "I have to go —I have to go to take an army examination." The officer directed defendants to pull the car off the highway about 50 feet. The inspector asked them to open the trunk of the car and one of them attempted to block the inspector, or at least got in his way. They said they didn't have anything in the trunk. Finally one of them told another to get the key and the trunk of the car was opened. The officer saw some clothing and two canvas bags, one with a hole in it. He asked what was in the bags, stating that it felt like straw. Defendants each claimed they didn't know. The officer stated: "I thought you told me it was dirty clothes."

There was some dispute between the officers and defendants as to what was

declaring that the search was not unreasonable, thus correctly, we think stated his reasons for so concluding:

"As to the reasonableness of the search: Ramirez conceded that the immigration authorities had a right under 11[8] U.S.C.A. [§] 1357 to interrogate defendants as to their citizenship and to require the opening of the trunk for the purpose of seeing whether any alien was concealed therein. Defendant insisted, however, that when the trunk was opened and the officers could see that there was no alien concealed therein, their right to search further ended; that they had no right to search for contraband; that there was no probable cause to believe that customs, or any other offense was being committed. These contentions overlook the realities of the situation.

"The immigration officers were also acting as customs inspectors. The right of customs officers to search *at points of entry* are much broader and in a separate category from searches generally. King v. United States, 5 Cir., 258 F.2d 754, and cases there cited. In addition, I think the officers had reasonable grounds to believe that a customs offense was being committed even though the checking point was, of necessity, somewhat removed from the border. Defendants were nervous and evasive; they were reluctant to have the trunk of the automobile opened at all. While the result of the search cannot justify

an arrest, the search here, in my opinion, was not unreasonable. Cf. Flores v. United States, 5 Cir., 234 F.2d 604; Haerr v. United States, 240 F.2d 533."

Because the guiding principles have been fully stated and discussed in the cases, we do not further discuss them here but, adding to those cited by the district judge in support of his view the cases cited in the margin,[2] we order the judgment affirmed.

said, whether any defendant attempted to block the officers, who was driving the car, etc. On the latter point the officers testified that Ramirez was driving the car but they were mistaken—it was Zamora. I accept the testimony of the officers, however, that the defendants were nervous and told the officers there was nothing in the automobile when they knew there was. As a matter of fact, Ramirez had brought the contraband across the International Bridge at Brownsville concealed under the hood of the automobile. Later it caught fire

and Ramirez and Garido removed it to the trunk. I doubt that the officers could see the canvas bags containing the marihuana without moving a suitcase and articles of clothing intended to cover it up.

2. Cannon v. United States, 5 Cir., 158 F.2d 952; Kelly v. United States, 5 Cir., 197 F.2d 162; U. S. v. Rabinowitz, 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653; Brinegar v. U. S., 338 U.S. 160, 172, 169 S. Ct. 1302, 93 L.Ed. 1879; and Draper v. United States, 79 S.Ct. 329.