David James **MANSFIELD**, Appellant,

v.

**UNITED STATES** of America,
Appellee.

No. 19411.

United States Court of Appeals
Fifth Circuit.

Sept. 25, 1962.

James S. McGrath, Beaumont, Tex., for appellant.

T. Fitzhugh Wilson, Edward L. Shaheen, U. S. Attys., D. H. Perkins, Jr., Asst. U. S. Atty., Shreveport, La., for appellee.

Before CAMERON, JONES and GEWIN, Circuit Judges.

CAMERON, Circuit Judge.

Appellant Mansfield, hereinafter referred to as defendant, was tried to a jury and convicted of smuggling marihuana into this country in violation of 21 U.S.C.A. § 176a [1] and sentenced to five

---

1. Which provides, *inter alia*, that proof of possession is sufficient evidence to authorize conviction, "unless the defendant explains his possession to the satisfaction of the jury." No such explanation was given.

years in prison. His main contention on appeal is that the trial judge was in error in not suppressing evidence consisting of thirteen and one-half ounces of marihuana, which appellant insists was obtained by an illegal search and seizure.

About 8:30 A.M., March 3, 1961, Customs Inspector Breda boarded the SS Marion Lykes which had docked earlier that day at the Port of Lake Charles, Parish of Calcasieu, Louisiana, to make the usual inspection of the crew, manifest, etc. Defendant did not at that time, nor prior thereto, make any declaration concerning any item he desired to bring into this country.

Customs Inspector Haley saw defendant come from the ship and walk toward the port gate leading to the street outside the port confines, carrying crumpled up in his left arm a beige or tan coat.

As Port Security Guard LeBleu checked defendant at the port gate, he noticed what appeared to be a white object of some nature partially concealed within the folds of the coat, but he was unable to make a complete examination of the coat at that moment, since he had also to check other seamen going through the gate. He told defendant to step aside and wait a minute until he could check him further. This he did, proceeding to the other side of the gate house to wait. When Guard LeBleu examined the coat a few moments later, he was unable to find the white object he thought he had seen concealed in it. When defendant started to leave the gate house he passed in front of it, stooping down as though to pick up something or to tie his shoe lace, momentarily causing him to disappear from LeBleu's view, the view being blocked by the wall below the window of the gate house. Defendant then straightened up and walked to a bar about 75 feet outside the confines of the Port of Lake Charles.

When LeBleu did not find the white object he had seen fleetingly while first attempting to check defendant, he immediately telephoned the Customs Inspection Office, some 50 yards distant from the gate house.

Customs Inspector Haley immediately went to the gate house, whereupon he learned what had happened, and he waited for defendant to leave the bar which he had entered upon leaving the gate house. Within a few minutes a cab drove up near the bar and honked its horn. Defendant and two other individuals left the bar and entered the cab. As the cab started to drive away, Inspector Haley stepped up to the cab and asked the driver to wait. Defendant was sitting beside the driver on the front seat. The other two individuals were in the rear. Haley observed defendant attempting to push the coat under the front seat of the cab. Haley immediately walked around to the other side of the cab, opened the door on defendant's side and requested that defendant get out and he did so. Haley reached in the cab and retrieved the partially concealed coat from under the front seat. He unwrapped the coat and found a white pillow case containing thirteen and one-half ounces of marihuana. He asked the defendant what was in the pillow case and the defendant replied "Nothing." He next asked the defendant who it was for, and defendant replied, "It is for my own use." When asked where he had obtained it defendant replied "Barranquilla, Colombia." Haley informed defendant he was under arrest, and told the taxi driver and the two individuals in the rear seat, also seamen from the SS Marion Lykes, that it was necessary that they all go to the Customs Station nearby. All four men were detained at the Customs Inspection Station and later that day transferred to the Calcasieu Parish Jail, Lake Charles, Louisiana. The cab driver and two other seamen were released.

■■ The right of a border search does not depend on probable cause and is in a separate category from searches generally. Detention and searches are the essence of the enforcement of laws governing the detection and punishment of

smuggling.[2] The actions of the officers here were proper and lawful under the statutes [3] and, even if probable cause had been necessary, we believe the circumstances would have justified their actions.[4]

Appellant's other contentions have been considered and we find that they, too, are without merit.

The judgment of the court below is, therefore,

Affirmed.

2. E. g., King v. United States, 1958, 5 Cir., 258 F.2d 754, and Murgia v. United States, 9 Cir., 1960, 285 F.2d 14.

3. 19 U.S.C.A. §§ 482, 1581(a) and (b), 1582.

4. Under less compelling circumstances, in Ramirez v. United States, 5 Cir., 1959, 263 F.2d 385, this Court held that the search of an automobile at a check point 75 miles from the border, without a warrant, was not unreasonable when the occupants were nervous and evasive and reluctant to have the trunk of the automobile opened at all. Here, the coat was in full view of the officer and the "search" was of the coat, not the automobile. Cf. Barrera v. United States, 5 Cir., 1960, 276 F.2d 654; Haerr v. United States, 5 Cir., 1957, 240 F.2d 533; Cannon v. United States, 5 Cir., 1946, 158 F.2d 952.