**UNITED STATES of America, Appellee,**

v.

**Ephriam McGLONE, Appellant.**

**UNITED STATES of America, Appellee,**

v.

**Foster L. DODSON, Appellant.**

**Nos. 11729, 11730.**

United States Court of Appeals
Fourth Circuit.

Argued Jan. 9, 1968.

Decided April 30, 1968.

---

Robert G. Doumar, Norfolk, Va. (Doumar, Pincus, Anderson & Knight, Norfolk, Va., on brief), for appellants.

Roger T. Williams, Asst. U. S. Atty. (C. V. Spratley, Jr., U. S. Atty., on brief), for appellee.

Before BRYAN, WINTER and BUTZNER, Circuit Judges.

BUTZNER, Circuit Judge:

Ephriam McGlone and Foster L. Dodson assail their convictions for theft from foreign shipment[1] upon the ground that essential evidence was obtained through unlawful search and seizure by a customs official. Finding no violation of their Fourth Amendment rights, we affirm the judgment of the district court.[2]

The search and seizure took place when a Japanese merchant vessel, the HAGUROSAN MARU, was discharging cargo at Lambert's Point Docks, Norfolk, Virginia. The ship's manifest listed 1,000 transistor radios packed in 10 cartons shipped from Yokohama, Japan, to an importer in Norfolk, subject to customs duty of $570.63. A customs inspector aboard the vessel discovered that five cartons were empty and one could not be found. The duty had not been paid on the 600 missing radios, and the customs entry was not made until two days after the seizure.

Lambert's Point Docks embrace four piers, which together with a large area of the adjacent shore are enclosed by a fence. Entry and exit are through a guarded gate. Abutting a road leading to Pier "N", where the vessel was docked, is a paved quay which is used for storage of foreign automobiles discharged at the port and for parking by longshoremen and other persons permitted inside the fence.

The customs inspector aboard the vessel notified John E. Blaski, Customs Port Investigator, of the missing radios.

---

1. Title 18 U.S.C. § 659, under which the defendants were convicted, provides in part:
   "Whoever embezzles, steals, or unlawfully takes, carries away, or conceals * * * from any vessel, or wharf * * * with intent to convert to his own use any goods * * * which are a part of * * * foreign shipment * * *" shall be punished.
   This statute was amended in 1966, after the offense charged in the indictment had been committed.

2. United States v. McGlone, 266 F.Supp. 673 (E.D.Va.1967).

Blaski, from experience, suspected longshoremen might have carried them off. He stopped McGlone, a longshoreman, who was leaving the parking area in his automobile. Blaski identified himself and asked McGlone if he had merchandise from the vessel in his car. McGlone stated he did not, but at Blaski's request, opened the trunk, where, stuffed in the toe of a boot, were two of the missing radios. Later, Blaski stopped Dodson, another longshoreman, who was approaching his parked car, again identified himself and asked if Dodson had merchandise from the vessel. Dodson said he did not, but he also permitted Blaski to search his car.[3] Blaski found four of the missing radios under some clothing on the front seat and another in the trunk. The radios were seized while the longshoremen and their cars were within the fence. Blaski had no information implicating either McGlone or Dodson other than the suspicion that longshoremen were pilfering cargo. He did not have a search warrant.

The defendants assert that the statutes authorizing a customs official to seize contraband and arrest smugglers are not applicable because they had never left the United States, or crossed the border from a foreign country, but on the contrary, were citizens lawfully at the pier where the ship was docked. They contend that because the case concerns larceny, not smuggling, their Fourth Amendment rights were violated when the officers searched without probable cause for stolen goods.

Blaski acted pursuant to 19 U.S.C. § 482, which authorized him as a customs officer to "stop, search and examine * * * any vehicle * * * on which he * * * shall suspect there is merchandise which is subject to duty, or shall have been introduced into the United States in any manner contrary to law, whether by the person in possession or charge, or by, in, or upon such vehicle * * *; and if [he] * * * shall find any merchandise on or about any such vehicle * * * which he shall have reasonable cause to believe is subject to duty or to have been unlawfully introduced into the United States whether by the person in possession or charge, or by, in, or upon such vehicle * * * he shall seize and secure the same for trial." Judge Mathes commented upon this statute in Alexander v. United States, 362 F.2d 379, 381 (9th Cir.), cert. denied 385 U.S. 977, 87 S.Ct. 519, 17 L.Ed.2d 439 (1966):

> "In conferring upon Customs officers such broad authority, circumscribed only by Constitutional limitations of the Fourth Amendment, the Congress has in effect declared that a search which would be 'unreasonable' within the meaning of the Fourth Amendment, if conducted by police officers in the ordinary case, would be a reasonable search if conducted by Customs officials in lawful pursuit of unlawful imports. Judicial recognition of this distinction has given rise to the term 'border search', in order to distinguish official searches which are reasonable because made solely in the enforcement of Customs laws from other official searches made in connection with general law enforcement.
>
> "Validity for this distinction is found in the fact that the primordial purpose of a search by Customs officers is not to apprehend persons, but to seize contraband property unlawfully imported or brought into the United States."

The numerous cases dealing with "border searches" uniformly recognize that validity of a search and seizure made by a customs officer does not depend simply upon whether it can be categorized as a "border search." This term is simply descriptive. Regardless of its label, the standard for a search by customs agents, as for any search, is the constitutional requirement of reasonableness, and, as Mr. Justice Black recently emphasized

---

3. The district court noted that the government did not rely upon the defendants' consent. United States v. McGlone, 266 F.Supp. 673, 674, n. 1 (E.D.Va.1967).

in Cooper v. State of California, 386 U.S. 58, 59, 87 S.Ct. 788, 790, 17 L.Ed. 2d 730 (1967), " * * * [W]hether a search and seizure is unreasonable within the meaning of the Fourth Amendment depends upon the facts and circumstances of each case * * *."

No rigid formula for testing the reasonableness of the search can be prescribed. A search incidental to the crossing of a border usually presents no problem.[4] Apart from this, however, the reasonableness of a search conducted by a customs agent generally depends upon such factors as the distance of the search from the point where goods could be introduced by the suspect into the United States,[5] the time that has elapsed since the suspect had an opportunity to bring in the goods,[6] and the circumstances upon which the officers base their suspicions.[7] The validity of the search usually depends upon whether all the facts establish reasonable cause to suspect that merchandise presently is being illegally introduced into the United States by the person the officer proposes to search. Cf. Alexander v. United States, 362 F.2d 379, 382 (9th Cir. 1966). Contrary to the defendants' assertion, its legality is not dependent upon showing that the custodian of the vehicle that is searched actually crossed the border.[8] The customs search and seizure, however, must not be remote, either in time or place, from the illegal introduction of the goods into the country.[9]

The facts and circumstances in this case establish that the search was reasonable. Blaski, the customs investigator, knew that radios subject to duty were missing from a foreign ship.

4. Carroll v. United States, 267 U.S. 132, 154, 45 S.Ct. 280, 69 L.Ed. 543 (1925); Bible v. United States, 314 F.2d 106, 107 (9th Cir.), cert. denied, 375 U.S. 862, 84 S.Ct. 131, 11 L.Ed.2d 89 (1963); Witt v. United States, 287 F.2d 389, 391 (9th Cir.), cert. denied, 366 U.S. 950, 81 S.Ct. 1904, 6 L.Ed.2d 1242 (1961); Landau v. United States Attorney, 82 F. 2d 285, 286 (2d Cir.), cert. denied, 298 U.S. 665, 56 S.Ct. 747, 80 L.Ed. 1389 (1936); United States v. Yee Ngee How, 105 F.Supp. 517 (N.D.Cal.1952).

5. E. g., King v. United States, 348 F.2d 814, 816 (9th Cir. 1965). The mere fact that the suspect has been passed through customs does not confer immunity from further examination by customs agents at a time and in a place reasonably close to his entry when circumstances give rise to suspicion. Morales v. United States, 378 F.2d 187, 190 (5th Cir. 1967).

6. E. g., Thomas v. United States, 372 F.2d 252, 255 (5th Cir. 1967).

7. Compare Marsh v. United States, 344 F. 2d 317, 325 (5th Cir. 1965), where the circumstances disclosed no grounds for suspicion, with Thomas v. United States, 372 F.2d 252, 255 (5th Cir. 1967), where grounds for suspicion existed. In United States v. Duffy, 250 F.Supp. 900 (S.D.N. Y.1965), the government's failure to prove that customs agents suspected a longshoreman's car contained contraband was a fatal omission indicating the search was arbitrary and capricious.

The validity of border searches is critically examined in Note, Border Searches and the Fourth Amendment, 77 Yale L.J. 1007 (1968).

8. Lannom v. United States, 381 F.2d 858, 861 (9th Cir. 1967), cert. denied, 389 U.S. 1041, 88 S.Ct. 784, 19 L.Ed.2d 833 (1968); Rodriguez-Gonzales v. United States, 378 F.2d 256, 258 (9th Cir. 1967); United States v. O'Brien, 265 F. Supp. 953 (D.Mass.1967).

9. In Carroll v. United States, 267 U.S. 132, 154, 45 S.Ct. 280, 285, 69 L.Ed. 543 (1925), the Court said:
"Travelers may be * * * stopped in crossing an international boundary, because of national self-protection reasonably requiring one entering the country to identify himself as entitled to come in, and his belongings as effects which may be lawfully brought in. But those lawfully within the country, entitled to use the public highways, have a right to free passage without interruption or search unless there is known to a competent official, authorized to search, probable cause for believing that their vehicles are carrying contraband or illegal merchandise."
In Bolger v. United States, 189 F.Supp. 237 (S.D.N.Y.1960), aff'd sub nom. Bolger v. Cleary, 293 F.2d 368 (2d Cir. 1961); rev'd on other grounds 371 U.S. 392, 83 S.Ct. 385, 9 L.Ed.2d 390 (1963), the court held invalid a warrantless search of a longshoreman's home for dutiable goods by customs officers, and

From experience he suspected the longshoremen working the ship. He confined his investigation to the dutiable merchandise missing from the ship. He did not conduct a general exploratory search for stolen goods merely to turn up wrongdoing not related to the customs laws. His search was limited to the enclosed guarded area adjacent to the pier, in which imported goods were customarily unloaded and in which those employed in loading and unloading operations were permitted to park. It took place shortly after the discovery of the empty cartons and before the longshoremen left the area. The factors of time, place, and opportunity for smuggling, together with the facts known to the investigator, established reasonable cause to suspect that the defendants were introducing dutiable goods into the United States without the payment of customs. Under these circumstances Blaski had statutory authority to search the vehicles, and the searches did not violate the defendants' Fourth Amendment rights.

The radios were admissible in evidence upon the charges of theft from a foreign shipment. Their use as evidence was not limited to prosecution under the revenue laws. The exclusionary rule that prohibits introduction of evidence wrongfully seized is a sanction to enforce the Fourth Amendment. Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961); Weeks v. United States, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914). When the search is reasonable, the reason for the exclusion no longer exists, and the evidence may be admitted in a criminal prosecution to which it is relevant.

No. 11,729—United States v. McGlone affirmed.

No. 11,730—United States v. Dodson affirmed.

enjoined them from testifying in a pending state prosecution for theft. Bolger initially was stopped and his car searched by customs agents looking for contraband after he was observed removing a carton

from a pier to his car. The district court held the initial search was legal, but the issue was not pursued on appeal. Cleary v. Bolger, 371 U.S. 392, 395 n. 4, 83 S.Ct. 385, 9 L.Ed.2d 390 (1963).