**UNITED STATES of America, Plaintiff,**

v.

**Raymond Charles KAYSER, Defendant.**

**Crim. A. No. 17988.**

United States District Court, S. D. Georgia, Savannah Division.

March 25, 1970.

Richard C. Chadwick, Bruce B. Greene, Asst. U. S. Attys., Savannah, Ga., for plaintiff.

John J. Sullivan, Savannah, Ga., for defendant.

ORDER

LAWRENCE, Chief Judge.

On October 22, 1969, at 12:25 P.M. *S.S. Steel Scientists,* an American cargo vessel, docked at the Garden City Terminal of the Georgia State Port. Savannah was the second port of call after her arrival from Karachi, Pakistan. She first touched at Wilmington, North Carolina.

Upon the vessel's arrival a surveillance was set up by the Supervisory Customs

Port Investigator and by Customs Port Investigator William L. Rogers. The defendant, Raymond Charles Kayser, was a member of the crew, a fact unknown to the Customs officials. They were unaware who he was before he was searched. They had no reason to suspect that he had narcotics in his possession or that he was importing contraband. About 2:00 P.M. they observed him leaving the dock area at the after end of the vessel which was in view of the place the investigators had positioned themselves. He was carrying a canvas bag and some clothes on a hanger. As the man got in a taxi about 200 feet from the pier the officers identified themselves and informed him that they were going to give his belongings a customs search. At the hearing before me Investigator Rogers described it as a routine border search. It took place within the customs area.

Three plastic bags were found inside a sweatshirt in the bag. They contained a blackish-green substance which was identified as hashish.[1]

Kayser was thereupon arrested and was jailed. Later a warrantless search was made of his stateroom where an incriminating letter was found in a lockerbox. A motion to suppress the hashish and the letter as evidence was filed by the defendant on the ground that they are fruits of a search forbidden by the Fourth Amendment. The question of legality comes before me following an evidentiary hearing.

Counsel for Kayser view the powers of customs authorities in such cases with too restricted an eye. Contemporaneous with the Bill of Rights, Congress enacted legislation, which placed searches of persons coming into the United States from a foreign country in an entirely different category from searches of the generality of citizens. See Boyd v. United States, 116 U.S. 616, 6 S.Ct. 524, 29 L. Ed. 746; "At the Border of Reasonableness: Searches by Customs Officials,"

53 Cornell Law Review, 871 (1968). "Customs agents of the United States are given broad statutory power to search for goods illegally introduced into this country. 19 U.S.C. §§ 482, 1581, 1582. Searches made pursuant to these statutes constitute a classification separate and distinct from ordinary searches and their validity is measured by different criteria." Morales v. United States, 378 F.2d 187 (5th Cir.). "[D]etention and search are of the very essence of the enforcement of the laws governing entrance of persons into this country and of the detection and punishment of smuggling." King v. United States, 258 F.2d 754 (5th Cir.).

In Alexander v. United States, 362 F. 2d 379 the Court of Appeals for the Ninth Circuit said:

"In conferring upon Customs officers such broad authority, circumscribed only by Constitutional limitations of the Fourth Amendment, the Congress has in effect declared that a search which would be 'unreasonable' within the meaning of the Fourth Amendment, if conducted by police officers in the ordinary case, would be a reasonable search if conducted by Customs officials in lawful pursuit of unlawful imports. Judicial recognition of this distinction has given rise to the term 'border search,' in order to distinguish official searches which are reasonable because made solely in the enforcement of Customs laws from other official searches made in connection with general law enforcement."

Counsel argue that the search of Kayser was not a "border search." I disagree. It was no different from that involved in United States v. Yee Ngee How, D.C., 105 F.Supp. 517. There a civilian employee on a naval transport was routinely searched at the pier following the arrival of the vessel from Japan. The search was made as defendant was about to enter San Francisco for the

---

1. Hashish is the resin, the essence, of an herb called *cannabis sativa* which is widely cultivated in Asia, including Pakistan. Marijuana is a species of this plant. The value of the hashish taken from Kayser was estimated at $88,000.

second time after the ship had docked.[2] The District Court ruled that during the entire time the ship is discharging cargo she remains on the "other" side of the "barrier" and that the latter is the point where customs officials elect to search persons before they are allowed to pass out into the public streets of the city.

In United States v. Glaziou, 2 Cir., 402 F.2d 8 two sailors were searched as they left the pier where a French ship was berthed at New York. The Court held that the appellants, who had heroin in their possession, were in the "border area" at the time they were searched. In Mansfield v. United States, 308 F.2d 221 (5th Cir.) the seaman was searched after debarking from an American ship and after having proceeded to a bar located about 75 feet outside the Port of Lake Charles, Louisiana. This was held to be a border search.

Kayser's argument that his case is different because Savannah was not the first port of call of the *Steel Scientist* is equally feckless. If any such distinction exists in respect to the right to search for contraband, all a smuggler would have to do to immunize himself from search would be to bide his time until the ship puts into some other American port. The regulation in 19 C.F.R. § 23.1(e) makes it plain that the fact that the vessel touched first at another American port is not significant.

One of the statutes out of which the search powers of custom officers arise is 19 U.S.C. § 482. It uses such phrases as "reasonable cause to suspect" and "reasonable cause to believe." A number of cases justify "border searches" on the basis of reasonable ground of suspicion. In United States v. Glaziou, *supra*, a nocturnal exit from a pier at New York was sufficient to justify the stopping of the sailors involved. Their nervousness and a bulge around the waist of one of the men furnished ground for search. Nervousness of a person and evasiveness permitted customs officers to open the trunk of a car some distance from the check point in the case of Ramirez v. United States, 5 Cir., 263 F.2d 385. See also Bible v. United States, 9 Cir., 314 F.2d 106. Bulges on the body constituted basis for the searches involved in United States v. Berard, D.C., 281 F.Supp. 328; United States v. Roussel, D.C., 278 F. Supp. 908; People v. Furey, 42 Misc.2d 579, 248 N.Y.S.2d 460. So did a white object concealed in the folds of a person's coat in Mansfield v. United States, 5 Cir., 308 F.2d 221. In Thomas v. United States, 372 F.2d 252 (5th Cir.) it was said that the search may be "predicated upon suspicion." There was a tip from an informer in that case. "Suspicion that a person is carrying merchandise unlawfully imported into the United States is sufficient." Walker v. United States, 404 F.2d 900 (5th Cir.). "It was necessary only that the customs agents had reasonable cause to *suspect* that the suitcase contained heroin which had been smuggled into this country. * * *" Stassi v. United States, 410 F.2d 946 at 951 (5th Cir.).

■ Customs officers may go aboard any vessel and make searches. 19 U.S.C. § 1581. Under § 1582 the Secretary of the Treasury is authorized to prescribe regulations for the search of persons and baggage. These Sections indicate a Congressional intent to grant broad authority to conduct reasonable searches necessary to the enforcement of customs laws and strict construction should not be permitted to defeat the statutory policy. United States v. Yee Ngee How, *supra*. It was there held that the right to search persons aboard a vessel includes the right to do so on the pier. The customs officer in that case conducted a "routine general search" and there was no suspicion on his part that the defendant had opium in his possession. The search was based

2. In United States v. McGlone, 266 F. Supp. 673 a District Court in Eastern Virginia extended the "border search" theory to longshoremen, not then on the pier, who had been working aboard a Japanese vessel where cargo thefts were being made. There was no information at the time of the search pointing to defendants other than the general suspicion that there was pilfering from the vessel. The lower Court was affirmed in 394 F.2d 75, 4 Cir.

solely on information that civilian crew members of naval transports were suspected of importing contraband drugs.

"An authorized federal border official may, upon unsupported suspicion, stop and search persons and their vehicles entering this country." Cervantes v. United States, 263 F.2d 800, 803 (9th Cir.). In Alexander v. United States, *supra*, it was held that "unsupported" and "mere" suspicion alone is sufficient to justify a search for purposes of Customs law enforcement. "[M]ere suspicion of possible illegal activity within their jurisdiction is enough 'cause' to permit a customs officer to stop and search a person." United States v. Glaziou, 402 F.2d at 12. In Henderson v. United States, 9 Cir., 390 F.2d 805, the Court, pointing out that border searches are unique, held that the mere crossing thereof justifies search of person and baggage and that not even "mere suspicion" is required in such cases.[3] "[T]here is reason and probable cause to search every person entering the United States from a foreign country, by reason of such entry alone." Witt v. United States, 9 Cir., 287 F.2d 389, 391.

In *Yee Ngee How*, as already noted, a routine search in the customs area without specific suspicion of the person searched was upheld. The Circuit Court of Appeals for this Circuit has described the decision as "well reasoned" and "particularly valuable" in the "careful analysis of the cases demonstrating that searches of persons entering the United States from a foreign country are in a separate category from searches generally." See King v. United States, *supra*. If the Fifth Circuit Court should have an opportunity in this case, it is to be hoped that it will adopt the reasoning of *Yee Ngee How* in respect to the right to make routine border searches in the "barrier" even where there is no reason to suspect the specific person of violating federal customs law.

As for myself and until contrarily instructed, I disavow any test or standard of customs searches like Kayser's which otherwise would have resulted in ten pounds of hashish being illegally imported into this country, contributing, for aught I know, to destroying the lives of American youths who in increasing numbers become victims of the narcotic habit. My idea is that anyone who comes into this country is subject to ordinary search within the area of the "barrier." If he who is searched has nothing to hide, he has nothing to complain about. If he is squeamish about his Fourth Amendment rights, let him stay out of the "barrier." I think Kayser belonged to a class of persons who can be routinely searched by customs officials without even mere suspicion and that such searches are not forbidden by the Fourth Amendment.

Defendant's motion to suppress as evidence the ten pounds of hashish seized by Customs is denied. The letter found in the lockerbox stands on a different footing. The seizure was not incidental to Kayser's arrest. It was not contraband since the statutory power to search trunks, etc. is conferred for the purpose of discovering illegally imported goods. I have not seen the letter and am unable to say whether it is an "instrumentality of crime" so as to be subject to border seizure incidental to an arrest.[4] Since a ruling on the motion to suppress the letter as evidence is not required at this time I defer decision.

3. To strip a person, added the Court, requires a real suspicion, directed specifically to that person. In United States v. Pedersen, D.C., 300 F.Supp. 669 a "strip search" was conducted and was held to be illegal. See also Huguez v. United States, 9 Cir., 406 F.2d 366. For the rule in the Fifth Circuit as to customs searches of body cavities of suspects see United States v. Briones, 1970, 423 F.2d 742.

4. See Landau v. United States Attorney for Southern District of New York, 2 Cir., 82 F.2d 285; 25 C.J.S. Customs Duties § 254, p. 557. In that case a memorandum was seized in a border search which was a list of merchandise necessary to be sure that the actual carrier turned over all of the illegally imported goods.