Vincent F. Naro, J.
A hearing was held on defendant’s motion to suppress a gun seized from his motor vehicle on the grounds that his constitutional rights have been violated.
The People produced one witness, Customs Officer Andrew Conigliaro, assigned to John F. Kennedy International Airport. On July 22, 1976, at approximately 7:00 p.m., Officer Conigliaro, together with his partner, Customs Officer Love, were assigned to patrol duty, in an unmarked car. While patrolling in the area of Hangar No. 14, Officer Conigliaro stated he observed the defendant William Breidenbach walking along the south side of Hangar No. 14, from west to east *214 carrying an airline flight bag. Hangar No. 14 was described by Customs Officer Conigliaro as a restricted area containing customs bonded material. He was kept under surveillance and after entering an automobile located in an employee parking area, the officers approached him and identified themselves as customs officers.
After the defendant claimed he worked for Pan American Airlines, the officers asked him for identification. He was able to produce a Florida driver’s license and the defendant said he was living with someone in Brooklyn while making arrangements to purchase a house.
While Officer Conigliaro examined his credentials, his partner, Customs Officer Love, asked to search defendant’s flight bag and vehicle, to which the defendant did not object. When the trunk was opened by the defendant at the officer’s request, it contained a wooden box. The box was opened by Customs Officer Love, who removed therefrom a gun and several rounds of ammunition. The gun was seized and thereafter the defendant was arrested.
Several questions are presented to the court by this case.
We must first determine whether the facts establish that this was a "border search.”
The defendant was observed walking adjacent to Hangar No. 14 in a bonded area carrying a flight bag.
Customs Officer Conigliaro described the area as containing a guardhouse in close proximity to a flight ramp not open to the public where only authorized airline personnel are permitted.
There is no requirement that a search take place at a geographic area designated by customs authority as a border itself.
In United States v Beck (483 F2d 203, 207-208) Circuit Judge Rosenn writing for a unanimous court held: "Practical considerations dictate a certain amount of elasticity in describing the area within which the border search standard is constitutionally appropriate * * * The area has not been limited to the actual confines of an international port or to the border itself. On the contrary, it has been expanded to 'a reasonable extended geographic area in the immediate vicinity of any entry point.’ See United States v. Glaziou, 402 F.2d at 13. The diminished standard, as the Supreme Court recently observed, 'may in certain circumstances take place not *215 only at the border itself, but at its functional equivalents as well.’ ”
It can be argued that the defendant apparently an employee of Pan American Airlines, was not entering the country and that the broad investigatory power accorded to custom officials by section 482 of title 19 of the United States Code has no application under the circumstances in this case.
The Beck case (supra, p 209) dealing with this very subject matter held: "The defendants are not immune from a border search because they were employees at the pier and not persons entering the country. Employees working in a border area are within the class of persons subject to a border search for contraband when leaving the area. United States v. Glaziou, 402 F.2d at 13; United States v. McGlone, 394 F.2d 75 (4th Cir. 1968). If employees were immune from its reach, they would be inviting, sitting targets for smugglers and thieves; and the effective enforcement of the customs laws, important to the economy and revenue of the country, would be transformed readily into shambles.”
The court finds the facts in the case justified a determination that the defendant was observed as he left a restricted area in close proximity to a building containing bonded material.
Under these circumstances, the search conducted by the customs officers constitute a "border search.”
We must now turn our attention to the remaining issue, the legality of the search itself.
Section 482 of title 19 of the United States Code provides in part: "Any of the officers or persons authorized to board or search vessels may stop, search, and examine * * * any vehicle, beast, or person, on which or whom he or they shall suspect there is merchandise which is subject to duty, or shall have been introduced into the United States in any manner contrary to law”.
The usual standard of probable cause to believe that a person has committed a crime or that a person possesses contraband demanded by the Fourth Amendment, is modified so as to permit a customs officer to search an individual on reasonable suspicion of illegal activity alone.
In Thomas v United States (372 F2d 252, 254) the court held: "Customs agents are authorized by 19 U.S.C. § 482 to stop and search any person they suspect is carrying merchan *216 dise unlawfully imported into the United States and to seize any merchandise which they 'shall have reasonable cause to suspect * * * to have been unlawfully introduced into the United States.’ Such a search * * * is in a separate category from searches generally because it may be predicated upon suspicion; neither a search warrant nor probable cause to believe the person has committed a crime is required. * * * This does not, of course, exempt border searches from the constitutional test of reasonableness.”
The defendant Breidenbach was first viewed by the customs officers walking alongside a building containing bonded merchandise carrying a flight bag. The defendant entered a vehicle parked nearby at which point the customs officers stopped him, searched his bag, and the vehicle.
The trunk of the car was found to contain a gun which the defendant asserts was unlawfully seized by the customs officers.
In United States v McGlone (394 F2d 75), discussed in the District Attorney’s memorandum of law, we find a case which appears somewhat analogous to the case at bar.
The defendants, McGlone and Dodson, two longshoremen, were employed at Lambert’s Point Docks, Norfolk, Virginia. The cargo of a Japanese merchant vessel at this dock included 1,000 transistor radios packed in 10 cartons shipped from Yokohama, Japan, to an importer in Norfolk.
It was discovered by a customs inspector that 600 of the radios subject to custom duty were missing.
Armed with this knowledge, Customs Port Investigator Blaski suspected longshoremen may have carried them off. He stopped McGlone and Dodson at separate intervals as they left the pier in their automobiles and inquired about the missing radios. Each claimed he had no knowledge of the missing radios. Upon an examination of their motor vehicles, a few of the missing radios were located.
Two radios were found in the toe of a boot in the trunk of the defendant McGlone’s automobile.
It is evident Investigator Blaski had no information linking either McGlone or Dodson to the theft other than his suspicion that longshoremen were pilfering cargo. The defendants contend that since the case involves larceny and not smuggling, their Fourth Amendment rights were violated when they were searched without probable cause.
*217 Circuit Judge Butzner writing for the court held (pp 77, 78): "Regardless of its label, the standard for a search by customs agents, as for any search, is the constitutional requirement of reasonableness, and, as Mr. Justice Black recently emphasized in Cooper v. State of California, 386 U.S. 58, 59, 87 S.Ct. 788, 790, 17 L.Ed. 2d 730 (1967), '* * * [W]hether a search and seizure is unreasonable within the meaning of the Fourth Amendment depends upon the facts and circumstances of each case’.” * * *
"The validity of the search usually depends upon whether all the facts establish reasonable cause to suspect that merchandise presently is being illegally introduced into the United States by the person the officer proposes to search.”
The court went on to say at page 79: "The factors of time, place, and opportunity for smuggling, together with the facts known to the investigator, established reasonable cause to suspect that the defendants were introducing dutiable goods into the United States without the payment of customs. Under these circumstances Blaski had statutory authority to search the vehicles, and the searches did not violate the defendants’ Fourth Amendment rights.”
One can logically conclude from a reading of this case that a customs officer has broad authority to request an individual to open the trunk of his car at a border area for inspection purposes.
This rather simple analysis can be utilized to uncomplicate the suppression question this court must resolve.
There is a distinction, however, between these cases.
Officer Conigliaro’s testimony discloses that he and his brother officer were on patrol when they observed the defendant in the locale of Hangar No. 14 on July 22, 1975. He was attracted to the defendant by two factors. (1) He was walking in an area alongside a building containing bonded merchandise, (2) He was carrying a flight bag.
Officer Conigliaro had no knowledge at that time that bonded merchandise was missing nor can it be said he was engaged in an ongoing investigation.
It is evident the officers elected to spot check the defendant for contraband.
When they opened the trunk, they did so without knowledge that any merchandise had been reported stolen.
*218 The People argue the validity of the search citing as authority section 482 of title 19 of the United States Code.
The numerous cases dealing with this subject matter make it clear that although customs officers do not require "probable cause” to search an individual for contraband, there must exist reasonable cause to suspect illegal activity.
The officers’ search of the flight bag and the interior of the automobile the defendant entered, can be justified under the circumstances on the theory that the facts establish a reasonable basis for the officers’ actions in the proper performance of their duties.
Absent any evidence of contraband, and lacking knowledge which would create a suspicion the officers were limited in their inquiry. The evidence did not reach the level of reasonable suspicion which would permit or warrant a search of the trunk of the automobile.
In the McGlone case (supra, p 79) Customs Officer Blaski confined his investigation to the dutiable merchandise he was informed was missing from the ship. "He did not conduct a general exploratory search for stolen goods merely to turn up wrongdoing not related to the customs laws. * * * The factors of time, place, and opportunity for smuggling, together with the facts known to the investigator, established reasonable cause to suspect that the defendants were introducing dutiable goods into the United States without the payment of customs.”
Clearly, the facts in the case at bar do not disclose that the customs officers had any reasonable suspicion that the trunk of the automobile contained any dutiable merchandise. They had never observed the defendant open the trunk of the automobile during their surveillance.
The "border search” exception to the requirement of probable cause contained in section 482 of title 19 of the United States Code is not an unlimited power conferred upon customs officials.
Although no formula for testing the reasonableness of a search exists, the court is satisfied the officers lacked statutory authority to search the motor vehicle’s trunk and the search violated the defendant’s Fourth Amendment rights.
The defendant’s motion to suppress the weapon seized from the trunk of his automobile is granted.