Donald Eugene KING, Appellant,

v.

UNITED STATES of America, Appellee.

No. 17027.

United States Court of Appeals Fifth Circuit.

Sept. 5, 1958.

Jacob G. Hornberger, Laredo, Tex., for appellant.

Charles L. Short, Asst. U. S. Atty., Laredo, Tex., Malcolm R. Wilkey, Asst. U. S. Atty., Washington, D. C., William

B. Butler, U. S. Atty., Houston, Tex., for appellee.

Before RIVES, CAMERON and BROWN, Circuit Judges.

CAMERON, Circuit Judge.

 Convicted upon a two-count indictment for importing and facilitating the transportation of heroin into the United States in violation of Section 174, Title 21 U.S.C.A. as amended,[1] appellant Donald Eugene King appeals, assigning one ground of error of the trial court, to-wit, its denial of his motion to suppress evidence that he was subjected to fluoroscopy at the hands of a government physician resulting in the discovery of a foreign object in his abdomen which, when recovered through the use of Epsom Salts, turned out to be one gram of heroin enclosed in a plastic container.[2] The court heard extensive oral testimony on the motion and decided it after consideration of briefs. The written opinion rendered by it[3] contains a full statement of the facts and the law and, with what was there written, we are in complete agreement, finding, as we do, that the decision is amply supported by the evidence.[4] Based upon the facts and the reasoning of the trial court's opinion, we think the motion to suppress was properly denied.

 We feel constrained to supplement the opinion of the trial court in one or two particulars to comment upon phases of the case as it was presented to us. We are unable to agree with the casual disposition appellant seeks to make of some of the authorities upon which the trial court placed greatest reliance. Foremost among these is the decision of the Court of Appeals of the Ninth Circuit in Blackford v. United States, 1957, 247 F.2d 745[5] (in which the Supreme Court has, since Judge Connally's opinion, denied certiorari, 1958, 356 U.S. 914, 78 S.Ct. 672, 2 L.Ed.2d 586). Of that decision appellant, in his brief, said: "The decision reached by the court in the Blackford case is a dangerous one and an incorrect one." We reject that statement *in toto* and we agree with the result there reached by the majority.

The reasoning of the majority opinion and the concurring opinion of Judge Chambers strike a fine balance between a strict regard for the rights of the individual and the avoidance of the sterility which would follow efforts at law enforcement if appellant's position should be accepted as sound.[6]

1. "Whoever fraudulently or knowingly imports or brings any narcotic drug into the United States or any territory under its control or jurisdiction, contrary to law, or receives, conceals, buys, sells, or in any manner facilitates the transportation, concealment, or sale of any such narcotic drug after being imported or brought in, knowing the same to have been imported or brought into the United States contrary to law, or conspires to commit any of such acts in violation of the laws of the United States, shall be imprisoned * * *"

2. The motion and subsequent trial on the merits were by agreement heard by the court along with similar proceedings against appellant's companion, Mikel Travis Michel, and the evidence and proceedings relate to both cases.

3. See opinion of Connally, District Judge, Southern District of Texas, Nov. 5, 1957, United States v. Michel (United States v. King), 158 F.Supp. 34.

4. Cf. United States v. Johnson, 1946, 327 U.S. 106, 111, 66 S.Ct. 464, 90 L.Ed. 562 and Cannon v. United States, 5 Cir., 1958, 166 F.2d 85, 87.

5. In Blackford the court noted (247 F. 2d at page 752) that between 18 and 20 per cent of the international traffic in narcotics over the Mexico-California border was accomplished by smuggling the drugs in various body cavities. The testimony of Dr. Lowery reveals that the percentage of such traffic from Mexico to Texas at the point involved in this case is fully as high.

6. One or two quotations from Judge Chambers' concurring opinion deserve repeating because of their applicability here: "But here it was Blackford who created, who first takes us into this disgusting sequence. * * * But I do say that to my sensibilities all of the shockingness was Blackford's." So here. Much of appellant's argument brings to mind the young man who, having pled

Blackford and the well reasoned and documented case of United States v. Yee Ngee How, D.C.N.D.Cal.1952, 105 F. Supp. 517, are particularly valuable in their careful analysis of the cases demonstrating that searches of persons entering the United States from a foreign country are in a separate category from searches generally. Both cases cite Boyd v. United States, 1886, 116 U.S. 616, at pages 623–624, 6 S.Ct. 524, at page 528, 29 L.Ed. 746, in which this language is used:

> "The search for and seizure of * * * goods liable to duties and concealed to avoid the payment thereof, are totally different things from a search for and seizure of a man's private books and papers for the purpose of obtaining information therein contained, or of using them as evidence against him. The two things differ *toto coelo*. In the one case, the government is entitled to the possession of the property; in the other it is not. * * * the seizure of goods forfeited for a breach of the revenue laws, or concealed to avoid the duties payable on them, has been authorized by English statutes for at least two centuries past; and the like seizures have been authorized by our own revenue acts from the commencement of the government. * * *
> " * * * in the case of excisable or dutiable articles, the government has an interest in them for the payment of the duties thereon, and until such duties are paid has a right to keep them under observation, or to pursue and drag them from concealment; * * * "[7]

Appellant ignores entirely the well settled principle that detention and search are of the very essence of the enforcement of the laws governing entry of persons into this country and of the detection and punishment of smuggling.[8] All of the action in this case took place between Saturday midnight and Sunday afternoon. Appellant was entering the United States, riding in a taxicab in company with another man. Everything done by the officers and the doctor was so clearly reasonable and within the letter and the spirit of the law governing search and capture of contraband that we do not feel that this opinion should be lengthened by discussing which of the recent cases of the Supreme Court[9] developing the "brutal and offensive" doctrine applies most nearly to the facts here.

The judgment of the court below is, in all things,

Affirmed.

---

guilty to murdering his parents, begged the mercy of the court on the ground that he was an orphan.

Further, from the concurring opinion (at page 754): "Also, I am impressed with the doctor's testimony, that proper concern for the prisoner's own health required prompt removal of this foreign body." Dr. Lowery, the prison physician here, emphasized this phase of the problem facing him and the customs officers. Rupture of the protective covering of the heroin would subject defendant to almost certain death. Dr. Lowery had had experience with such a rupture in another case.

**7.** And see also Carroll v. United States, 1924, 267 U.S. 132, 45 S.Ct. 280, 69 L. Ed. 543.

**8.** 19 U.S.C.A. Sections 482, 1581 and 1582. It is significant that § 1582, by way of insuring the completeness of the search, authorizes the employment of "female inspectors for the examination and search of persons of their own sex."

**9.** Rochin v. People of California, 1952, 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183; Irvine v. People of State of California, 1954, 347 U.S. 128, 74 S.Ct. 381, 98 L. Ed. 561; and Breithaupt v. Abram, 1957, 352 U.S. 432, 77 S.Ct. 408, 1 L.Ed.2d 448.