**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Willie DAVIS, Defendant-Appellant.**

No. 12652.

United States Court of Appeals
Seventh Circuit.

Nov. 17, 1959.

Rehearing Denied Dec. 23, 1959.

Frank W. Oliver, Chicago, Ill., for appellant.

Robert Ticken, U. S. Atty., John F. Grady and John Peter Lulinski, Asst. U. S. Attys., Chicago, Ill., of counsel, for appellee.

Before HASTINGS, Chief Judge, and DUFFY and SCHNACKENBERG, Circuit Judges.

HASTINGS, Chief Judge.

Willie Davis, appellant, and his co-defendant, Reid, who is not a party to this appeal, were charged jointly in a one-count indictment with receiving, concealing and facilitating the transportation of marihuana, knowing the same to have been imported into the United States contrary to law, in violation of Section 176a, Title 21 U.S.C.A. Appellant's motions to dismiss the indictment, to suppress the evidence, for judgment

at the close of the Government's case and at the close of all the evidence, and in arrest of judgment were all overruled. Following a jury trial Davis was found guilty and was sentenced to imprisonment for a period of ten years. This appeal followed.

The errors relied upon relate to the sufficiency of the indictment to charge any offense, the overruling of the motion to suppress the evidence and admission of evidence from the Government agents, the rulings of the trial court on the other motions above referred to, and the court's refusal to give certain instructions to the jury tendered by appellant.

Appellant offered no evidence in his own defense, and the sufficiency of the evidence to sustain the verdict of the jury is not questioned in this appeal.

The indictment in this case charges:

"That on or about July 15, 1958, in Will County, in the Northern District of Illinois, Eastern Division, Willie Davis and Osborne Reid, defendants herein, did knowingly, and with intent to defraud the United States, receive, conceal and facilitate the transportation and concealment after unlawful importation of approximately 60 pounds of marihuana, knowing the same to have been imported into the United States contrary to law; in violation of Section 176a, Title 21, United States Code, as amended by the Narcotic Control Act of 1956."

Appellant contends that an indictment that charges an offense for dealing with something imported "contrary to law" must specify the statute which was violated by such importation and that the count in question is insufficient in this respect. He relies upon Keck v. United States, 1899, 172 U.S. 434, 19 S.Ct. 254, 43 L.Ed. 505 and Babb v. United States, 5 Cir., 1955, 218 F.2d 538. These cases arose under 18 U.S.C.A. § 545 which relates to the importation of "any merchandise" into the United States "contrary to law."

In Keck, the defendant was charged with importation of diamonds contrary to law, and the Court held that the charge in the indictment in terms of the statute was "obviously too general, and did not sufficiently inform the defendant of the nature of the accusation against him." 172 U.S. at page 437, 19 S.Ct. at page 255. Since the importation of merchandise (diamonds) "is not *per se* contrary to law, and could only become so when done in violation of specific statutory requirements," (*ibid.*) the Court held that specific pleading was necessary.

In Babb, the charge related to the concealment and transportation of cattle imported contrary to law. In holding the indictment to be insufficient, that court followed Keck as authority and concluded that "the indictment should have alleged some fact or facts showing that the cattle in question were imported or brought in contrary to some law; and that it is not enough to say that they were imported or brought in 'contrary to law.'" 218 F.2d at page 541.

Appellant does not complain that the indictment failed to give him sufficient notice or that he was surprised by the evidence introduced by the Government. He contends, in effect, that under Keck and Babb, with or without a showing of prejudice, the indictment under consideration is insufficient as a matter of law. We disagree.

Section 174, 21 U.S.C.A. makes the importation of *all narcotics* illegal, and it has been held that the failure to specify in the indictment the statutes violated is not a defect in narcotics prosecutions under this section. Wong Lung Sing v. United States, 9 Cir., 1925, 3 F.2d 780, 781 and Pon Wing Quong v. United States, 9 Cir., 1940, 111 F.2d 751, 754. Each of these cases distinguishes Keck v. United States, supra. However, appellant would have us rely on principles drawn from the line of cases decided under 18 U.S.C.A. § 545 which involve smuggling of "any merchandise" rather than those governing narcotics cases arising under Section 174, 21 U.S.C.A.

While the Government concedes that under certain rare circumstances marihuana may be legally imported, it aptly points to the many state and federal statutes restricting the use, possession, transfer and importation of marihuana. 18 U.S.C.A. § 545 deals with useful articles and not narcotics. As was said in Caudillo v. United States, 9 Cir., 1958, 253 F.2d 513, at page 517, certiorari denied Romero v. United States, 1958, 357 U.S. 931, 78 S.Ct. 1375, 2 L.Ed. 1373, " * * * this Court knows of no medical or scientific use to be made of marihuana, save perhaps for occasional testing, in order to make scientific comparisons with other narcotics, barbiturates, and amphetamines."

Having in mind the several federal statutes making the possession and use of marihuana a criminal offense, we conclude that the sufficiency of an indictment under 21 U.S.C.A. § 176a, in the case before us, is more properly guided by the standards enunciated in narcotics cases under 21 U.S.C.A. § 174 as defined in Wong Lung Sing v. United States, 9 Cir., 3 F.2d 780 and Pon Wing Quong v. United States, 9 Cir., 111 F.2d 751, supra. We hold that the indictment in question is sufficient to inform appellant fairly of the charge he is required to meet and is drawn with enough certainty to obviate any danger of subsequent prosecution for the same conduct. Indeed, appellant concedes as much and admits there has been no prejudice to him. We hold that the trial court did not err in overruling the motion to dismiss the indictment.

Appellant further contends that the activities of the Customs Agents leading up to his arrest were of such unlawful character that this prosecution could not properly be maintained. This objection is framed in terms of a motion to suppress evidence from such agents, which was denied, and by the tender of instructions to the jury relating to such alleged violations, which were refused by the trial court. Since this objection concerns the acts of the Government agents *prior* to the transfer of the marihuana to the car in which appellant was riding, we are required to consider the facts relevant to such activities.

There is little controversy as to the specific conduct of appellant alleged to be in violation of Section 176a, 21 U.S.C.A. on which the indictment was based. On July 15, 1958, near Lemont, Illinois, Customs Agent Glanzer observed the transfer of two sacks of marihuana from the car of Sandy Esquivel to a car in which appellant was riding. After appellant and Reid drove away, Glanzer, in the company of several other Customs Agents, pursued appellant for about three-quarters of a mile and arrested them. In the car were found two sacks of marihuana.

Prior to the arrest under the above circumstances, we find from the record that Agent Kilman met Esquivel in Del Rio, Texas, on July 11, 1958, and followed him across the border into Mexico that day where he observed Esquivel purchasing marihuana. After Esquivel had indicated his willingness to cooperate with the customs officials, he drove his Chevrolet from Del Rio to Chicago, Illinois, accompanied by Glanzer, Kilman and a third agent, the three agents traveling in two separate cars, Esquivel driving alone. Early in the trip Glanzer and Kilman saw marihuana inside the door panels of the Chevrolet. Kilman picked up and examined one of the 59 bags of marihuana inside the two larger sacks and then put it back.

As the three-car convoy made its way north, all four persons stayed overnight in the same motels, where Kilman paid Esquivel's bills. Esquivel's car was blocked in the car port overnight by the agents' cars to prevent his absconding with the marihuana. The party arrived in Chicago on the morning of July 14.

Appellant contends that this course of conduct by these agents, in effect, estopped the Government from prosecuting him for the crime charged. He argues that the agents themselves violated several federal statutes, and this forms the basis for his motion to suppress their evidence.

The several statutes claimed by appellant to have been violated by the agents are 21 U.S.C.A. § 176a, on which the indictment is based (claiming that Esquivel purchased and brought into the United States the marihuana in question under Agent Kilman's direction and control); 19 U.S.C.A. § 482, relating to the seizure of merchandise (claiming that this statute *required* the agents to seize the marihuana when they first found it); 19 U.S.C.A. §§ 1602, 1605 and 1611, relating to the disposition of seized marihuana (claiming that the agents had no right to bring the marihuana from Texas to Illinois); 21 U.S.C.A. § 176a, relating to the transportation of marihuana (claiming that the agents transported or facilitated the illegal transportation from Texas to Illinois); and finally, 26 U.S.C.A. § 4742, requiring for valid transfer a written order of the transferee (claiming that Kilman "transferred" the marihuana to Esquivel in Brownwood, Texas, when he put back the one sack of marihuana he had taken from the door panel of the Chevrolet for examination.

Appellant does *not* contend that the concert between the agents and Esquivel resulted in his entrapment, but he relies solely on his defense of estoppel.

The contention that the *agents* caused the importation of the marihuana from Mexico contrary to 21 U.S.C.A. § 176a, was before the jury in the following instruction given by the trial court:

> "If, from the evidence you have a reasonable doubt as to whether or not the Government itself caused the marihuana referred to in the indictment to be imported into the United States, if indeed it was imported into the United States, then you must find the defendant not guilty."

The finding of guilt inferentially indicates that the jury did not believe the Government had unlawfully imported the marihuana in question. There is no issue before us as to the sufficiency of the evidence to support that result.

As to the remaining alleged violations, appellant relies on decisions of the Supreme Court of the United States which allowed the suppression of evidence gained by federal officers. Under the facts of the instant case his reliance on these decisions is misplaced. Each is readily distinguishable.

In Nardone v. United States, 1937, 302 U.S. 379, 58 S.Ct. 275, 82 L.Ed. 314, cited by appellant, it was held that the criminal prohibition against "any person" tapping telephone wires applied to federal officers and suppressed evidence so gained. There a basic right of privacy was violated. The Supreme Court, in reaching this result, contrasted cases where "a reading which would include [public] officers would work obvious absurdity as, for example, the application of a speed law to a policeman pursuing a criminal or the driver of a fire engine responding to an alarm." Id. at page 384, 58 S.Ct. at page 277.

In Upshaw v. United States, 1948, 335 U.S. 410, 69 S.Ct. 170, 93 L.Ed. 100, relied on by appellant, the Supreme Court interpreted the rule, formulated in McNabb v. United States, 1943, 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819, that confessions are inadmissible when gained as the result of holding and interrogating persons without taking them "forthwith" before a committing magistrate, as required by 5(a) of the Federal Rules of Criminal Procedure, 18 U.S.C.A. Again, there is the deprivation of a basic personal liberty.

In Rea v. United States, 1956, 350 U.S. 214, 76 S.Ct. 292, 100 L.Ed. 233, another of appellant's authorities, the court enjoined a federal officer from testifying in a state court concerning evidence he had obtained in violation of federal law relating to search and seizure. The Court based its decision on its "supervisory powers over federal enforcement agencies," stating that enjoining "the federal agent from testifying is merely to enforce the federal Rules against those owing obedience to them." Id. at page 217, 76 S.Ct. at page 294. The exercise of the

supervisory power over federal officers, as in Rea, certainly does not force the conclusion that the violation of *any law* prejudicially taints evidence gained as a result of such violation.

In Nardone, Upshaw and Rea, the evidence sought to be introduced was gained directly through the admitted violation of federal law. Further, those cases involved basic personal rights. Neither of these conditions is to be found in the case before us.

We think there is merit in the Government's contention that the agents did *not* violate the several statutes relied on by appellant. The smuggling question was properly submitted to the jury. To require immediate seizure of the contraband upon discovery would deprive federal officers of a most effective method of obtaining evidence against ultimate consignees, clearly a result contrary to Congressional intent. We find no rational basis for concluding that the Government took possession of the marihuana in Texas. We find no basis for holding that the marihuana was imported under the direction and control of the agents within the meaning of 21 U.S.C.A. § 176a. Finally, it seems absurd to say that the agent "transferred" the marihuana to Esquivel in Texas merely because he had taken one sack from the car, examined it and put it back.

However, assuming, *arguendo*, that the conduct of one or more of the federal agents *was* in violation of one or more of the federal statutes under consideration, we do not believe this case comes within the holdings of Nardone, Upshaw and Rea. None of the statutes discussed were designed for the protection of marihuana dealers. None of them conferred any rights upon appellant. The allegedly illegal course of conduct of the agents neither deprived appellant of any substantial personal right nor violated any deep-rooted social value. In such a situation, short of the defense of entrapment (not present here) or the overriding principles of Nardone, Upshaw and Rea, appellant's estoppel theory is without merit. We hold that the trial court did not err in overruling appellant's motion to suppress evidence.

It follows, of course, that we hold appellant's tendered instructions concerning the activities of the Government agents were properly refused and that the trial court did not err in so ruling. See, United States v. Taylor, 7 Cir., 1959, 266 F.2d 310, 313.

The judgment of the district court is Affirmed.