Paul Garcia MURGIA, Pedro Hernandez Ramirez and Joe Ramirez Carpio, Appellants,

v.

**UNITED STATES of America,** Appellee.

No. 16811.

United States Court of Appeals Ninth Circuit.

Dec. 9, 1960.

William F. Gavin, San Diego, Cal., for appellants.

Laughlin E. Waters, U. S. Atty., Robert J. Jensen, George W. Kell, Timothy M. Thornton, Asst. U. S. Attys., for appellee.

Before STEPHENS, BARNES and KOELSCH, Circuit Judges.

BARNES, Circuit Judge.

The three appellants herein were convicted by the court below, sitting without a jury, of a conspiracy to import heroin, 18 U.S.C. § 371, and the illegal importation of narcotics, 70 Stat. 570 (1956) 21 U.S.C.A. § 174. (Two counts.) Murgia and Ramirez (also known as Hernandez) were sentenced to concurrent ten year terms; Carpio to concurrent five year terms. Upon filing a timely appeal, each appellant was permitted to proceed in forma pauperis. Each was represented below and on this appeal by able counsel.

Prior to September 9, 1959, custom agents at Calexico, California, had information that large quantities of narcotics were being imported into the United States concealed in body cavities;[1] that these narcotics were being taken to an abandoned house north of Calexico, and there removed and used. From evidence that need not be repeated, the rectum was the cavity usually used. The agents had information that Murgia was a known narcotics addict and that he registered as an addict upon frequent crossings of the border. On this date, Custom Agent Scott saw Murgia enter the United States from Mexico on foot after having registered as a narcotics addict. Murgia was not searched at the border. Scott followed Murgia on foot for a distance of about four blocks. At this point, he saw Murgia enter a car in which were seated three other persons. Agent Scott identified one of the other occupants as Carpio, a convicted narcotics violator and known by the custom officers to be such. Agent Scott was then picked up in a government car by Agent Richards. Scott drove the car, and together they followed the car in which Murgia was riding.

Murgia was seated in the left rear seat, Ramirez or Hernandez in the right rear, Carpio was driving and one Lilly, a witness at the trial but not a defendant, was sitting in the right front seat.

The officers followed the Murgia car through Calexico and out to Highway 98. About a mile or a mile and one-half outside of Calexico, Scott sounded the siren on the government vehicle.

The siren was still being sounded when an arm extended from the right side of the defendants' car and an object was thrown out from the car. Murgia's car then stopped and all its occupants were lined up and searched for weapons.

One officer retrieved the object which had been thrown from the car. It proved to be a narcotic addict's "kit," consisting of an hypodermic needle, eyedropper, a small burned aluminum metal cap, and a piece of paper, all enclosed in a dark cloth. When questioned at the scene about this kit, all four defendants denied knowledge of it.

At that time all four men were placed under arrest, and were returned to the Customs House where they were interrogated separately. Lilly confessed and

---

[1]. This court has previously taken judicial notice of the fact that eighteen to twenty per cent of the heroin brought across the Mexican-California border is smuggled in by use of various body cavities. Black-ford v. United States, 9 Cir., 1957, 247 F.2d 745. Similar smuggling across the Mexican-Texas border "is fully as high." King v. United States, 1958, 5 Cir., 258 F.2d 754 (note 5).

implicated the other three defendants. Lilly told the agents that Murgia then had narcotics concealed in his rectum.

At the Customs House Murgia had been asked if he had any heroin concealed on his person or in his body, and he denied it. Customs Agent Richards then said, "Well, you will have no objection to going to see a doctor." Murgia's reply was non-responsive, but was, "I don't have anything on me." Murgia was then taken to the El Centro County Hospital in a government automobile. Murgia was physically touched by the agents in making the trip but no force was exerted in connection with this examination. Murgia offered no resistance in going to the hospital; he went along voluntarily and willingly. At the hospital, Agent Scott asked Murgia to remove his trousers and Murgia declined to do so, upon which Agent Scott said, "Bend over and remove your trousers." Murgia thereupon complied. Dr. Milligan then probed the rectum with his finger and withdrew the red balloon which contained heroin. Thus no question arises herein under the "brutal and offensive treatment" doctrine re-emphasized recently by the Supreme Court.[2]

All four participants had records as convicted narcotic addicts or narcotic violators. Ramirez had smuggled heroin into this country in 1956. Murgia and Carpio had been known to the border guards for four years; and had been under surveillance during 1959—Murgia, particularly, having been trailed on foot. He was trailed on this occasion on foot to the automobile.

When Murgia joined his three companions in the auto, he stated "someone was on his tail"—that: "he thought someone was following him."

Lilly had taken shots of heroin with either or both Murgia and Ramirez each day for "many" days during the three months prior to September 9, 1959. Lilly had paid Murgia to obtain heroin for him, on numerous occasions, "more than five but less than ten." Murgia had brought this heroin across the border concealed in his rectum.

■ Appellants urge that the search of Murgia was violative of the fourth and fifth amendments, and the heroin obtained in the search should have been suppressed.

We cannot agree. Appellants' counsel urges that this was not a border search. Again we cannot agree. No customs search can be made precisely at the border. All must be made somewhere north of the border between Mexico and the United States. No real search of Murgia was made when he first crossed the border line. He was not asked to undress. But he was followed, or "tailed" until he made contact with individuals known to be narcotic addicts and/or users. The defendant Murgia, no longer on foot, was seen rapidly leaving the border by automobile. He knew he was being followed—presumably by an officer of the law. It was necessary for the border patrol to follow him in an auto. When signaled to stop by the sounding of a siren, someone in the auto attempted to discard equipment used ordinarily for the taking of heroin, and for that purpose only. No defendant admitted ownership of the equipment. No search of the defendants, save for weapons, had up until that time been made. The ascertainment that that which was thrown away was narcotic equipment justified both the arrest of all defendants, and the further search of each, incident to the lawful arrest. Viewing this as a border search, which we do find it was up to the time of ascertaining what was in the discarded package, the stopping of the vehicle for the border search of Murgia was proper and in accordance with statutory law. After the ascertainment of the fact that one or more of the four defendants had had the narcotic equipment in their possession, severally or jointly, there was valid ground for the

**2.** Rochin v. People of California, 1952, 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183. Cf. Irvine v. People of State of California, 1954, 347 U.S. 128, 74 S.Ct. 381, 98 L.Ed. 561, and Breithaupt v. Abram, 1957, 352 U.S. 432, 77 S.Ct. 408, 1 L. Ed.2d 448.

search of all four. We need not pass on whether the defendants other than Murgia could have been searched as part of a border search had there been no attempted disposal of the narcotic equipment.

 The right of border search does not depend on probable cause. Carroll v. United States, 1924, 267 U.S. 132, 154, 45 S.Ct. 280, 69 L.Ed. 543. Cf.: People v. Brown, 1955, 45 Cal.2d 640, 290 P.2d 528; Johnson v. United States, 1948, 333 U.S. 10, 16–17, 68 S.Ct. 367, 92 L.Ed. 436; People v. Simon, 1955, 45 Cal.2d 645, 290 P.2d 531. "[The] searches of persons entering the United States from a foreign country are in a separate category from searches generally * * * [and] 'are totally different things from a search for and seizure of a man's private books and papers * * *.'" King v. United States, 5 Cir., 1958, 258 F.2d 754, at page 756, certiorari denied 359 U.S. 939, 79 S.Ct. 652, 3 L.Ed.2d 639, quoting Boyd v. United States, 1886, 116 U.S. 616, 623, 6 S.Ct. 524, 29 L.Ed. 746. Cf.: Blackford v. United States, 9 Cir., 1957, 247 F.2d 745, certiorari denied 356 U.S. 914, 78 S.Ct. 672, 2 L.Ed.2d 586; United States v. Yee Ngee How, D.C.N.D.Cal. 1952, 105 F.Supp. 517.

Appellants seek relief from the broad effect of the border search rule by certain language in Landau v. United States Attorney for Southern District, 2 Cir., 1936, 82 F.2d 285, 286, certiorari denied 298 U.S. 665, 56 S.Ct. 747, 80 L.Ed. 1389; and United States v. Yee Ngee How, supra. In both these cases, the right of a border search was upheld. In Landau, the court said: [82 F.2d 286] "The search which customs agents are authorized to conduct upon entry is of the broadest possible character * * *." It was there upheld, even though no arrest occurred, and there was no warrant issued. In Yee Ngee How, supra, the court interprets the "vessel" mentioned in 19 U.S.C.A. § 1581 [3] to include the pier as well, and continues: "Had the petitioner or his possessions been searched while he was off the ship and within the city [of San Francisco], the situation would have been different; but this was not done." Id., 105 F.Supp. at page 523. Such language is dictum at best, and of course, not binding on this court.

To adopt appellants' theory would require us to ignore the meaning of the broad language in each of the three statutes involved,[4] "at any place in the United

3. Title 19 U.S.C.A. § 1581(a) provides as follows:

"(a) Any officer of the customs may at any time go on board of any vessel or vehicle at any place in the United States or within the customs waters or, as he may be authorized, within a customs-enforcement area established under sections 1701 and 1703–1711 of this title, or at any other authorized place, without as well as within his district, and examine the manifest and other documents and papers and examine, inspect, and search the vessel or vehicle and every part thereof and any person, trunk, package, or cargo on board, and to this end may hail and stop such vessel or vehicle, and use all necessary force to compel compliance."

4. 19 U.S.C.A. § 1581(a), supra. And cf.: 19 U.S.C.A. § 1581(d) which provides as follows:

"(d) Any vessel or vehicle which, at any authorized place, is directed to come to a stop by any officer of the customs, or is directed to come to a stop by a signal made by any vessel employed in

the service of the customs and displaying proper insignia, shall come to a stop, and upon failure to comply a vessel or vehicle so directed to come to a stop shall become subject to pursuit and the master, owner, operator, or person in charge thereof shall be liable to a penalty of not more than $5,000 nor less than $1,000." 19 U.S.C.A. § 1582 provides:

"Search of persons and baggage; regulations

The Secretary of the Treasury may prescribe regulations for the search of persons and baggage and he is authorized to employ female inspectors for the examination and search of persons of their own sex; and all persons coming into the United States from foreign countries shall be liable to detention and search by authorized officers or agents of the Government under such regulations." 19 U.S.C.A. § 482 reads as follows:

"§ 482—Search of vehicles and persons. Any of the officers or persons authorized to board or search vessels may stop, search and examine, as well without as within their respective districts, any ve-

States," 49 Stat. 521 (1935) 19 U.S.C.A. § 1581; "any vehicle * * * as well without as within their respective districts" 14 Stat. 178 (1866) 19 U.S.C.A. § 482, and "all persons coming into the United States from foreign countries shall be liable to detention and search * * *." 46 Stat. 748 (1930) 19 U.S. C.A. § 1582.

■■ We agree with appellants' second legal point, that an arrest cannot be justified by what a later search discloses. But appellants were stopped as part of a lawful border search; arrested as a result of, and only after, evidence which they had attempted to discard had been found *without a search;* and which evidence created probable cause for their arrest. They were convicted because of the foregoing, and because of evidence found in a subsequent lawful search. We do not find Johnson v. United States, supra, relied upon by appellants, applicable to the facts herein.

■ Nor is the border search and subsequent arrest governed by California law. To the contrary, the federal law applies, as hereinabove quoted and decided. This was a search of a person entering the United States from a foreign country. We therefore need not reach the question of "probable cause" under California law.

■■ As to Carpio's conviction, we agree, as did the trial court, that a close question is presented by evidence, particularly with respect to count two (importation). But the trial court did find him guilty, and certainly there is sufficient evidence of his participation in a conspiracy under the one count. He drove the car; the four individuals all knew of Murgia's intent and purpose in going to Mexico; Carpio waited until Murgia returned; there was evidence that the narcotics kit had been carried openly on the floorboard in the front of the car. That was where Carpio sat. It could readily be inferred by the trier of fact that Carpio knew of the narcotics and the contents of the kit. This evidence, and not merely his previous record, convicted him on the conspiracy count. The sentence he received on each count was the same, and concurrent. Thus, if defendant Carpio was validly convicted under the conspiracy count (one), a reversal cannot be had regardless of the validity of the conviction on the importation count (two). Fuentes v. United States, 9 Cir., 1960, 283 F.2d 537; Sinclair v. United States, 1929, 279 U.S. 263, 49 S.Ct. 268, 73 L.Ed. 692; Winger v. United States, 9 Cir., 1956, 233 F.2d 440; King v. United States, 9 Cir., 1960, 279 F.2d 342.

The judgment of conviction as to each defendant is affirmed.

hicle, beast, or person, on which or whom he or they shall suspect there is merchandise which is subject to duty, or shall have been introduced into the United States in any manner contrary to law, whether by the person in possession or charge, or by, in, or upon such vehicle or beast, or otherwise, and to search any trunk or envelope, where ever found, in which he may have a reasonable cause to suspect there is merchandise which was imported contrary to law;

and if any such officer or other person so authorized shall find any merchandise on or about any such vehicle, beast, or person, or in any such trunk or envelope, which he shall have reasonable cause to believe is subject to duty, or to have been unlawfully introduced into the United States, whether by the person in possession or charge, or by, in, or upon such vehicle, beast or otherwise, he shall seize and secure the same for trial."