Nathaniel T. Helman, J.
In February of 1970, two parcels arrived by mail from Afghanistan addressed to u Bob Goldstein c/o Martin Schatz ’ Aware of a developing traffic in narcotic drugs smuggled in from Afghanistan, customs agents examined the packages carefully, and, their suspicions aroused by the *382 weight and appearance of the parcels, had them opened. Upon discovering that the contents were indeed ‘ ‘ Hashish ’ ’, the parcels were taken to testing laboratories which formally confirmed the inspectors’ findings. The subsequent investigatory and enforcement procedures employed by representatives of the city police, the United States Post Office, and the Customs Inspectors, have involved the court in some unusual questions of search and seizure, defendant having moved to suppress the evidence.
Some three weeks after the original opening of the parcels a plan was conceived by the enforcement officers to effect an arrest of persons criminally involved in the transaction. Two customs agents, a police officer, and a uniformed post office employee, were dispatched to the apartment of Messrs. Goldstein and Schatz, the addressees on the packages. The post office employee knocked on the door, while the others remained on the floor landing below. When a lady answered the door stating that “ Gold-stein ’ ’ no longer resided at the apartment, and that ‘ ‘ Schatz ’ ’ was not. home, she was given the packages. A few minutes later, pursuant to instructions, the post office representative again knocked on the door, stating that he required a signed receipt. This was returned to him through a peephole signed “ Schatz ” on each side of the receipt. Several minutes later the post office employee, this time with a police officer alongside him, knocked again. The door was opened by the defendant Schatz, and the officers entered. Officer Montemarano announced that he was a police officer, and stated ‘ ‘ The parcel delivered to you contained narcotics, where is it? ” Defendant Schatz responded “ I don’t know what was in the parcel # * I threw it out the window ’ ’, pointing to the window. A search of the courtyard below revealed the packages, and the defendant Schatz was arrested.
At the outset, the District Attorney contends that defendant Schatz does not have standing to object to the search and seizure of the subject packages. Citing the Convention of the Universal Postal Union, article 4, he emphasizes the “ ownership ” of a postal article in the sender until it has actually been delivered to the designated addressee. The case of Jones v. United States (362 U. S. 257, 263) a leading authority on the subject of “ standing ’ ’, has held that although defendant claims to be neither sender nor addressee there is no necessity “ for a preliminary showing of an interest in the premises searched or the property •seized. ’ ’ Here defendant has been charged with criminal possession of a contraband, and has a direct relationship to the property seized. A test recently applied in People v. Estrada (28 AD 2d 681) is whether he has been a ‘‘ victim ” of an alleged *383 illegal search, or “ one against whom the search was directed. ” In my view, defendant is a person against whom an alleged unconstitutional act was 1 ‘ directed ’ ’, and has standing to make this application.
Defendant challenges the original opening of the packages as an unlawful invasion of his constitutional privileges under the Fourth Amendment. The powers of customs inspectors in this area are well-defined in Federal statutes, and in Postal and Customs Regulations and have received broad approval in numerous Federal decisions (Boyd v. United States, 116 U. S. 616 ; Carroll v. United States, 267 U. S. 132 ; Alexander v. United States, 362 F. 2d 379). Standards applicable to the movement of mail within the country are not applicable to mail coming in from other countries and traditional requirements of reasonable and probable cause do not apply.
Mail-sorting rooms have been established at ports of entry, and post office officials relinquish control of such mail to customs officials for examination. A Treasury Department regulation (Code of Fed. Reg., tit. 19, § 9.5) authorizes the opening of sealed parcel post packages by customs agents immediately upon receipt. Similarly, postal regulations authorize the opening of imported parcels without formality, even though sealed. “ The right of border search does not depend on probable cause. * * * The searches of persons entering the United States from a foreign country are in a separate category from searches generally * * * and are totally different things from a search for and seizure of a man’s private books and papers.” (Murgia v. United States, 285 F. 2d 14, 17 ; United States v. Beckley, 335 F. 2d 86 ; Landau v. United States Attorney of Southern Dist. of N. Y., 82 F. 2d 285).
Such distinctions as exist relate to searches of the person as compared with the opening of parcels containing merchandise. Some recent decisions of the Ninth Circuit Court of Appeals have gone beyond the standard of “ mere suspicion ” as supporting a search, in the ease of a strip search of the person. There, a requirement of “ real ” suspicion has been added, supported by “ articulable facts that would reasonably lead an experienced, prudent customs official to suspect that a particular person seeking to cross our border is concealing something on his body.” (United States v. Johnson, 425 F. 2d 630, 632 ; United States v. Guadalupe-Garza, 421 F. 2d 876).
Defendant argues, however, that the parcels constituted “ first class ” mail, and as such were restricted by section 4251 of title 39 of the United States Code, as mail “closed against postal *384 inspection ’5 and by section 4057 requiring a search warrant. The evidence at the hearing, however, sustained the People’s position that this was not11 first class ” mail. To begin with, it was not so designated, and was regarded by the Customs Inspector as fourth class mail. The packages bore none of the markings or descriptive indorsement of first class mail, and were described by the post office representative as 6 c insured ’ ’ parcels, a classification usually reserved for articles sent by third or fourth class mail. (Santana v. United States, 329 F. 2d 854.)
The standards applicable to mail matter moving entirely within the country are not applicable to mail matter coming in from outside the country, at least where it appears that a customs determination must be made. (United States v. Beckley, 335 F. 2d 86.) It may be noted that non-mailable and prohibited matter is the subject of a special section (Code of Fed. Beg., tit. 39, § 262.1). As recently as May 3,1971, the United States Supreme Court in an opinion by Mr. Justice White sustained a statute holding illegal the knowing use of the mails for the distribution of obscene materials, and by separate opinion authorized their seizure by customs in a border search. (United States v. Thirty-Seven Photographs, 402 U. S. 363.)
It was certainly not within the contemplation of the draftsmen of the postal regulations, that narcotic smugglers could avoid the long arm of customs by the mailing of sealed parcels containing drugs, to addressees in the United States. The impounding of such parcels upon their arrival, to await the procurement of a search warrant, would be a futile gesture, since no court would grant such a warrant except on reasonable and probable cause— a practical impossibility with an unopened package eyed suspiciously by a Customs Inspector, based on its weight and appearance. Nor is the exclusion of such evidence required even if postal regulations were violated. At best, a violation of administrative regulation cannot serve as a basis for excluding evidence at a trial, in the absence of proof of a 66 grave danger to clearly defined national policy ” (United States v. Sohnen, 298 F. Supp. 51, 56 ; Stone v. United States, 380 U. S. 922). Defendant’s constitutional rights were therefore not violated by the opening of the parcels.
Several questions have been raised by defendant concerning the visit of the enforcement officials to the Schatz apartment. Admittedly, the contraband was in the hands of the agents some three weeks before the arrest, providing ample time for the procurement of a warrant, if one was necessary. That an arrest and not a search was contemplated is clear from the testimony, *385 and defendant concedes that the officers appeared at the apartment ‘ ‘ with the express intention of arresting anybody who accepted the package.”
The language of the court in Amador-Gonzales v. United States (391 F. 2d 308, 313) is apposite: “once an arrestee’s privacy is invaded by his being placed in lawful custody, there is little or no additional invasion in searching him or the immediate surroundings which the police have entered to effect the arrest.” One of the exceptions to this general rule is where the arrest is a mere pretext for an otherwise illegitimate search (Henderson v. United States, 12 F. 2d 528). The motivations of the officers as well as the surrounding circumstances must be considered. These officers had good reason to believe that defendant was a party to an unlawful importation of drugs, and the parcel was brought to the apartment in order to find a person who would unlawfully possess or claim the right to possess the contraband. Had Goldstein or Schatz opened the door and accepted the package, they would have been arrested without entry or further search. The exigencies of the situation, presented when a stranger opened the door, called for the delivery of the parcel to a.stranger, with the expectation that when the door was reopened and entry obtained, the unlawful possessor would be found in dominion and control of the drugs. None of the activities of the officers following entry involved a physical search of the apartment or its occupants, nor did their actions indicate an intent to enter the apartment for such purpose.
Recent legislative and judicial trends show a disposition to look broadly at the ‘ ‘ notice ’ ’ requirements for entering a dwelling (Code Crim. Pro., § 178). Exigent circumstances, based on the nature of drugs, and their ready disposability, have excused compliance (People v. Richardson, 36 A D 2d 603 ; People v. McIlwain, 28 A D 2d 711). Under all of the surrounding facts and circumstances, I find that the purpose of the entry was an arrest, the basis for which was reasonable and probable cause, and that any search would have been incidental to the arrest. No warrant was required.
In answer to the officer’s question “ Where is the package?”, defendant allegedly replied, “ I threw it out the window.” Was this response the result of a custodial interrogation so as to require full Miranda warnings ? It is clear that the officer entered the apartment for the purpose of making an arrest, and introduced his questioning by announcing his police authority. Defem dant was no longer free to go as he pleased and interrogation fell within the restraints described in cases such as Orozco v. Texas (394 U. S. 324), People v. Yukl (25 N Y 2d 585), and *386 People v. Rodney P. (Anonymous) (21 N Y 2d 1), defendant not having waived any of his constitutional rights. The alleged admission must he suppressed.
There remains the question whether the recovery of the package in the courtyard of the building is tainted with the alleged admission of Schatz, so as to require its suppression as the fruits of an illegally obtained admission. The People argue that the voluntary abandonment by defendant having been effected before the officers entered, their recovery of the package is not tainted by a later admission. Had the admission disclosed a secret or concealed place where the parcel could not otherwise have been found, defendant might have some justification for his position. Here the officer who found the package did not hear the alleged admission, but having been told a package was thrown out, immediately went to the courtyard and found it. Under similar circumstances, the court, in People v. Soto (55 Misc 2d 219, 221) found that “ continued search by the police would have led to a discovery of the existence and location of the knife ” (125 feet from the -scene), and, in denying suppression, held that improperly obtained evidence does not become " sacred and inaccessible. ” (Nardone v. United States, 308 U. S. 338.) Having abandoned the property prior to the entry into the apartment, defendant no longer could claim the right to its exclusive dominion and control.
Accordingly, the motion to suppress will be granted as to the alleged admission by defendant in his response to the officer’s question, “ Where is it?”, and otherwise denied.