**UNITED STATES of America,
Plaintiff,**

v.

**Jerrold Benton FELDMAN et al.,
Defendants.**

**Crim. No. 13155.**

United States District Court,
D. Hawaii.

Nov. 15, 1973.

Thomas P. Young, Asst. U. S. Atty., Harold M. Fong, U. S. Atty., Honolulu, Haw., for plaintiff.

Brook Hart, Hart, Sherwood, Leavitt, Blanchfield & Hall, Honolulu, Haw., for defendants.

DECISION AND ORDER ON MO-TIONS TO SUPPRESS, MOTION FOR SEPARATE COUNTS, FOR SEPARATE TRIAL, AND SUG-GESTION OF FAULTY INDICT-MENT

SAMUEL P. KING, District Judge.

For purposes of this decision, the facts are taken from the indictment, the search warrants, the affidavit of the assistant United States attorney as modi-

fied by stipulated changes in paragraphs 11, 12, and 22, and the testimony of Customs Agent Albert Ah Nee at the hearing on the motions to suppress.

The pending motions are (1) Motion to Suppress and for Return of Property on Behalf of Defendants Richard Mark Feldman, Lynn Hollingsworth Feldman, and Marina Colleen Omeara, (2) Motion to Suppress and for Return of Property on Behalf of Defendant Jerrold Benton Feldman, and (3) Motion for Separate Counts, for Separate Trial of Counts, and for Severance of Defendant Jerrold Benton Feldman. There is also (4) the suggestion by defendants in their memoranda that the offenses of importation charged in the first three counts of the indictment were completed in California and therefore improperly laid in Hawaii.

Customs Dog "Toni 403A" with the help of Customs Dog Handler Marvin P. Calhoune sniffed out a mail package (Parcel A) containing approximately two pounds three ounces of marihuana in hashish form at the Los Angeles Airmail Facility, Los Angeles, California, on October 30, 1972. The package was postmarked "Netherlands", showed no return address, and was directed to Mr. Mortimer Feldman, c/o Jerry Feldman, 5561 Kalanianaole Highway, Honolulu, Hawaii 96821. Investigation on the same day turned up two more such mail packages at the facility, as confirmed by Customs Opener Verifier Packer Timothy Durant. One (Parcel B) contained approximately two pounds five ounces of marihuana in hashish form, was postmarked "Netherlands", showed no return address, and was directed to Mr. Richard Feldman, 2185 Round Top Drive, Honolulu, Hawaii 96822. The other (Parcel C) contained approximately two pounds three ounces of marihuana in hashish form, was postmarked "Netherlands", bore the return address "Van Pelt, # 98 Prins H. Hivstrasse, Ams., Holland", and was directed to Mr. and Mrs. R. Cesario, P. O. Box 15304, Honolulu, Hawaii 96815.

The three packages were forwarded to United States Postal Inspector P. R. Hirsch, Honolulu, Hawaii, by registered mail pouches, and subsequently delivered to the United States Customs Agency Service, Honolulu, Hawaii, on November 9, 1972.

Examination of the contents of the mail packages by Police Chemist Milton Chang, Honolulu Police Department, reaffirmed that the substance was indeed marihuana in hashish form. Further investigation disclosed that Defendant Richard Feldman resided and received mail at 2185 Round Top Drive, Honolulu, Hawaii 96822, that Defendant Jerrold Feldman, on November 10 and 11, 1972, submitted to postal authorities at the Waialae-Kahala Post Office a change of address order and a written request that mail addressed to Mortimer Feldman, c/o Jerry Feldman, 5561 Kalanianaole Highway, Honolulu, Hawaii 96821, be forwarded to Jerry Feldman, 2126 Wilder Ave., Honolulu, Hawaii 96822, and that Defendant Robert Cesario was registered to and receiving mail at P. O. Box 15304, Honolulu, Hawaii 96815.

## RICHARD MARK FELDMAN, LYNN HOLLINGSWORTH FELDMAN, AND MARINA COLLEEN OMEARA

On November 16, 1972, at about 10:00 A.M., the parcel addressed to Defendant Richard Feldman was taken to the Round Top address by postal authorities for delivery. The addressee was not at home. A postal notice of attempt to deliver mail was left at the premises indicating that the parcel would be redelivered on Friday, November 17, 1972. Defendant Lynn Feldman approached the mail carrier on his route about an hour after the attempted delivery and requested the parcel, but the mail carrier informed her that the parcel had been returned to the post office by another carrier and would be redelivered the next day.

On November 17, 1972, at about 10:00 A.M., a supervised delivery of the same parcel was made at the Round Top Drive address to Defendant Lynn Feldman. The premises were kept under surveillance. At about 10:23 A.M., Defendant Marina Colleen Omeara was seen leaving the house. She was arrested and questioned. She had nothing with her of an incriminating nature.

At about 12:30 P.M., Defendant Richard Feldman entered the house. At about 12:50 P.M., customs agents entered the house pursuant to a search warrant issued earlier that day at about 9:30 A.M. by United States Magistrate Harold R. Sullivan. A search revealed the wrappings of the parcel and the tin can container for the hashish in a garbage can directly outside of the kitchen door, but no contraband. Defendants Richard Feldman and Lynn Feldman, who were husband and wife, were arrested and advised of their constitutional rights and that the search would continue until the contraband was found. After conferring with his wife, Defendant Richard Feldman informed Customs Agent Albert Ah Nee that the contents of the tin can had been thrown from the rear porch into the shrubbery and directed the agent to the area where the hashish was found on the ground approximately 25 yards from the house.

The search of the house continued and resulted in the discovery of (a) receipts for three Western Union International telegrams dated October 23, 24, and 26, 1972, from Defendant Richard Feldman to Lynn Percifield, American Express, Amsterdam, Netherlands, containing instructions concerning the shipment of "cheese" to Mr. and Mrs. R. Cesario, (b) a United States Passport issued to Lynn Hollingsworth Percifield and showing that she had entered the Netherlands on October 21, 1972, and returned to the United States on October 27, 1972, (c) a yellow plastic bag identical to that used to wrap the hashish in the mail packages in question.

## JERROLD BENTON FELDMAN

On November 16, 1972, at about 11:30 A.M., the parcel addressed to Mortimer Feldman, c/o Jerry Feldman was taken to the Wilder Avenue address by postal authorities for delivery. The addressee was not at home. A postal notice of attempt to deliver mail was left at the premises indicating that the parcel would be redelivered on Friday, November 17, 1972.

On November 17, 1972, at about 8:00 A.M., Defendant Jerrold Feldman asked at the main post office for the parcel and was told that the carrier had already departed with it. At about 2:30 P.M., the carrier arrived at the Wilder Avenue address and found a note posted on the front door of the house, addressed to him, and instructing him to "place the parcel inside the white door by the garage and close it afterwards" and further found in the mail box the notice of attempt to deliver mail with written instructions to the mail carrier to leave the parcel "inside door" and signed "Jerry Feldman". The notes were retrieved by the mail carrier and the parcel was placed inside the rear door of the house as requested.

The premises were kept under surveillance. At about 3:30 P.M., Defendant Jerrold Feldman entered the house. At about 3:35 P.M., he departed. He was followed for a while and then arrested. He had nothing with him of an incriminating nature.

The Wilder Avenue house was entered pursuant to a search warrant issued earlier that day at about 9:30 A.M. by United States Magistrate Harold R. Sullivan. A search produced immediately the wrappings and the metal container from the parcel, both in plain view on a table in the living room. The hashish was subsequently discovered in a dresser drawer in a bedroom and residual amounts of marihuana were discovered in an adjoining room.

## ROBERT FRANK CESARIO

From November 18 through November 30, 1972, approximately five attempts were made to effect delivery of the parcel addressed to Mr. and Mrs. R. Cesario. There was no response to notices placed in the post office box that the parcel was available. Thereafter, no further attempt was made at delivery and the contraband was seized.

### The Search Warrants

The search warrant relating to the Round Top Drive premises, and the search warrant relating to the Wilder Avenue premises, were both issued on November 17, 1972, at about 9:30 A.M. and *before* the contraband which was the subject of the warrant was on the premises.

The usual form of search warrant was used with the printed words "there is now being concealed certain property, namely" and to each had been added the typed description "marihuana in hashish form and documents and instrumentalities relating to the shipment and ownership of the marihuana, more specifically described in paragraph 2 of the Affidavit." On the other hand, the affidavit in each case clearly set forth that the contraband was not yet on the premises but "will be delivered" later that day (in one case about a half hour later, in the other about an hour later). Each affidavit also contained a paragraph reading:

"That a surveillance will be maintained by the said authorized Customs officers to insure that the parcel is taken into the said premises and that this warrant will not be executed until after the offense has been committed."

The attached affidavits recite the circumstances leading to the arrival and inspection of the mail packages at Los Angeles and Honolulu.

### The Indictment.

By indictment filed December 15, 1972, the United States charged: in Count I, Defendants Richard Mark Feldman and Lynn Hollingsworth Feldman with illegal importation into Hawaii of Parcel A in violation of 21 U.S.C. §§ 952(a) and 960(a)(1); in Count II, Defendants Jerrold Benton Feldman and Lynn Hollingsworth Feldman with illegal importation into Hawaii of Parcel B in violation of the same sections; in Count III, Defendants Robert Frank Cesario and Lynn Hollingsworth Feldman with illegal importation into Hawaii of Parcel C in violation of the same sections; and, in Count IV, the foregoing four defendants and Defendant Marina Colleen Omeara with conspiracy under 21 U.S.C. § 963 to violate the same sections.

The charge against Defendant Marina Colleen Omeara was dismissed on motion of the United States Attorney on March 16, 1973.

The charges against Defendant Robert Frank Cesario went to trial jury-waived on July 6, 1973, a severance and separate trial of counts as to him having been granted. The evidence against him did not go beyond what has been set forth above, that is, that he and his wife were joint addressees of Parcel C. which they never received. He was acquitted.

### Faulty Indictment

Defendants have not yet formally raised as a defense to Counts I and II, that the alleged offenses were not committed in Hawaii but have in their memoranda referred to United States v. Lember, 319 F.Supp. 249 (E.D.Va.1970). In that case, Chief Judge Hoffman held that the offense of smuggling marihuana under 21 U.S.C. § 176a (the predecessor, in relevant part, to 21 U.S.C. § 960(a)(1)) was complete when the package in question arrived in the United States from Vietnam and was opened at the San Francisco Airport which was the port of entry for the parcel. He granted a motion for judgment of acquittal as to the charge as stated in the indictment having been committed within the Eastern District of Virginia. He pointed out that the Constitution and the Federal Rules of Criminal Procedure each provide for a trial in the district in

which the offense was committed. He specifically noted 18 U.S.C. § 3237 regarding a "continuing offense" and held that the statute did not apply in this kind of a situation.

■ Here the indictment in Counts I and II alleges illegal importation into Honolulu, Hawaii. The port of entry was Los Angeles, California. Under *Lember,* the offense of illegal importation was complete in Los Angeles, California. Therefore, a motion for judgment of acquittal at the conclusion of the government's case will have to be granted as the government will not have introduced any evidence whatsoever to support this aspect of the charges.

In the event that the indictment is amended to allege Los Angeles, California, as the place where the offenses of illegal importation were committed, defendants will have an objection to venue which they may or may not wish to waive. There may be other charges such as facilitating the importation of the illegal contraband, which would not be subject to this objection.

This discussion may be premature. However, I am persuaded by Chief Judge Hoffman's opinion and would expect to follow his lead in further proceedings under this indictment.

### *Motions to Suppress Contraband*

The motions to suppress raise as a principal issue the admissibility of an imported parcel of contraband first uncovered by a warrantless customs search and thereafter retrieved by seizure from the person or premises of the addressee following a supervised delivery and pursuant to an anticipatory search warrant issued shortly before the delivery and grounded solely on the existence of the parcel so addressed.

The legal arguments for exclusion are:

1. The initial warrantless customs inspection on mere suspicion is unconstitutional.

2. Assuming the legitimacy of warrantless customs inspections for purposes of contraband detection and confiscation, a warrant must be obtained before the contraband can be detained for any appreciable time as part of a plan directed at criminal prosecutions.

3. Authorities transmitting to the addressee a parcel known to contain contraband (a) violate federal law as well as postal and customs regulations requiring seizure and notification to the addressee, and (b) commit the crime of illegal importation; accordingly the government is estopped from prosecuting.

4. The delivery of known contraband constitutes entrapment.

5. A warrant issued in anticipation of the delivery of contraband is invalid because it lacks *present* probable cause and vests unreasonable discretion in the executing authorities.

6. The existence of an imported parcel containing marihuana is not alone sufficient probable cause for a search warrant directed at recipient-addressee's premises.

These arguments have been discussed and for the most part rejected in the following cases:

United States v. Doe, 472 F.2d 982 (2d Cir. 1973); United States v. Galvez, 465 F.2d 681 (10th Cir. 1972); Chapman v. United States, 443 F.2d 917 (10th Cir. 1971); United States ex rel Beal v. Skaff, 418 F.2d 430 (7th Cir. 1969); United States v. Beckley, 335 F.2d 86 (6th Cir. 1964), cert. denied sub nom., Stone v. United States, 380 U.S. 922, 85 S.Ct. 921, 13 L.Ed.2d 807 (1965); United States v. Davis, 272 F.2d 149 (7th Cir. 1959); United States v. Coughlin, 338 F.Supp. 1328 (E.D.Mich. 1972); United States v. Swede, 326 F.Supp. 533 (S.D.N.Y.1971); United States v. Sohnen, 298 F.Supp. 51 (E.D.N.Y.1969); People v. Glen, 30 N.Y.2d 252, 331 N.Y.S.2d 656, 282 N.E.2d 614 (1972); People v. Schatz, 66 Misc.2d 381, 321 N.Y.S.2d 186 (Sup.Ct.1971); People v. Tobiass, 69 Misc.2d 700, 330 N.Y.S.2d 824 (Rockland County Court 1972); People v. Garcia, 62 Misc.2d 666, 309 N.Y.S.2d 721 (Alleghany County

Court 1970); People v. Marcil, 27 Cal. App.3d 404, 103 Cal.Rptr. 874 (1st Dist. 1972); Alvidres v. Superior Court, 12 Cal.App.3d 575, 90 Cal.Rptr. 682 (2d Dist. 1970).

■ Defendants admit that warrantless customs searches of imported parcels can be made on "mere suspicion". *Doe, Beckley, Swede, Sohnen, Tobiass,* and *Schatz* all hold that border search standards apply to mail coming into the country (at least where customs determinations are involved) rather than the search standards applicable to mail moving entirely within the country.

*Beckley* and *Swede* discussed and approved as law enforcement procedures the detention and monitored delivery of contraband following warrantless customs searches. Controlled deliveries of contraband were sanctioned also in *Galvez, Beal, Coughlin, Glen, Schatz, Garcia,* and *Marcil.*

United States v. Outland, 345 F.Supp. 1250 (E.D.Mich.1972), condemned the warrantless detention of marihuana because the delay in delivery was "so unreasonable as to render it illegal". The delay between discovery and delivery was 85 days, for which the government had no reasonable explanation. The court stated:

"Government authorities may, of course, refrain from apprehending suspects or seizing property until they reach their destination. But the Government may not be permitted to transmit contraband to premises that it desires to search long after it has broken the course of movement of the supposed contraband." (at page 1253).

■ Here, I find that the delay from discovery on October 30, 1972, at Los Angeles to delivery on November 17, 1972, in Honolulu was satisfactorily explained and was not unreasonable or prejudicial.

■ *Beckley, Sohnen, Swede,* and *Schatz* held that administrative regulations did not rise to the level of national policy so that their violation required a *per se* rule of exclusion. In *Davis* the court brushed aside the defense of estoppel, saying in part:

"To require immediate seizure of the contraband upon discovery would deprive federal officers of a most effective method of obtaining evidence against ultimate consignees, clearly a result contrary to Congressional intent." (272 F.2d at p. 153).

■ *Chapman* and *Doe* held that a controlled delivery of contraband did not constitute entrapment where the government was only monitoring the crime and had not itself initiated the offense. In this connection, *Outland* suggests that too long a monitoring may result in the government being in the position of initiator. But that limit was not reached in this case.

■ *Beal* discussed and approved of an anticipatory search warrant. *See* also *Glen, Alvidres, Tobiass,* and *Marcil* to the same effect. In *Galvez,* prior arrangements had been made to obtain a search warrant which was then issued minutes after delivery. Obtaining a search warrant too early might well be subject to similar objections as obtaining one too late or executing one too long after issue. *See* Mitchell v. United States, 103 U.S.App.D.C. 341, 258 F.2d 435 (1958); Durham v. United States, 403 F.2d 190 (9th Cir. 1968). No unreasonable passages of time between issuance and delivery or between delivery and execution are present in this case.

■ It is noted that the affidavits attached to the search warrants in this case promise not to execute the warrants "until after the offense has been committed". A form of statement that did not assume specific guilt would seem to be preferable. I postulate that a warrant may be issued for the search and seizure of contraband in unoccupied premises, or even if no one is arrested in connection therewith. In other words, it is not necessary to identify any particular person or persons as being responsible for the presence of

contraband in a residence in order to justify a warrant to enter that residence to search for and to seize that contraband. All that is needed is probable cause to believe that the contraband is there. This is supplied by the delivery by the mail carrier of known contraband to the residence and its transportation into the house. The recipient might well be completely innocent, yet the warrant may still be executed. *See Coughlin* (delivery accepted by defendant's parents' maid).

■■ The argument that the affidavits do not present facts to show that the offense of unlawful importation was taking place at the premises to be searched is without merit. The facts set forth show illegal importation of contraband and that the contraband is "being held in violation of 21 U.S.C. 952(a)", which is correct. The specific charges that may later turn up in an indictment need not be spelled out in the affidavit nor in the search warrant.

Following the foregoing reasoning and the authority of *Beal,* the requirements of probable cause were met.

### Motions to Suppress Other Items

The only seized items still at issue are the receipts for telegrams, passport of Defendant Lynn Hollingsworth Feldman, and yellow plastic bag taken from the Round Top Drive residence as a result of a search following the recovery of Parcel B.

On the evidence adduced before me, I am of the opinion that the motion to suppress as to these items is well taken and should be granted.

■ Upon a proper showing, such items might be subject to search and seizure under a warrant. *See* Warden v. Hayden, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967); Fed.R.Crim.P. 41(b), as amended, effective October 1, 1972.

■ To include these items within the authority of the search warrant, however, there must have been facts and circumstances shown in the affidavit that would justify a man of reasonable caution in the belief that the items to be seized were in the stated place. *See* United States v. Lucarz, 430 F.2d 1051 (9th Cir. 1970). Probable cause as to a suspect's guilt is not in itself enough to support a search of his residence. (Id.).

■ The affidavit must be sufficient in itself and may not be bolstered by oral testimony before the magistrate. United States v. Anderson, 453 F.2d 174 (9th Cir. 1971). The facts in the affidavit must justify a conclusion that the object of the search is on the premises. United States v. Bailey, 458 F.2d 408 (9th Cir. 1972).

There being no such facts and circumstances set forth in the affidavit here, there would have been no probable cause to list the items in question in the search warrant. Therefore, even if they were so listed, their seizure under the warrant would have to be voided for lack of probable cause.

■ Assuming probable cause, still the items were not in fact specified in the warrant. The term "documents and instrumentalities relating to the shipment and ownership of the marihuana" is too broad to particularly describe the things to be seized.

In Marron v. United States, 275 U.S. 192, 48 S.Ct. 74, 72 L.Ed. 231 (1927), the court laid down the standard that still remains valid:

"The requirement that warrants shall particularly describe the things to be seized makes general searches under them impossible and prevents the seizure of one thing under a warrant describing another. As to what is to be taken, nothing is left to the discretion of the officer executing the warrant."

*See* Boyd v. United States, 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746 (1886); Stanford v. Texas, 379 U.S. 476, 85 S.Ct. 506, 13 L.Ed.2d 431 (1965).

Broad language may be appropriate and sufficient in some situations. *See* United States v. Fuller, 441 F.2d 755

(4th Cir. 1971); James v. United States, 416 F.2d 467 (5th Cir. 1969), cert. denied, 397 U.S. 907, 90 S.Ct. 902, 25 L.Ed.2d 87; United States v. Honore, 450 F.2d 31 (9th Cir. 1971), cert. denied, 404 U.S. 1048, 92 S.Ct. 728, 30 L.Ed.2d 740; United States v. Sultan, 463 F.2d 1066 (2d Cir. 1972); United States v. Scharfman, 448 F.2d 1352 (2d Cir. 1971), cert. denied, 405 U.S. 919, 92 S.Ct. 944, 30 L.Ed.2d 789. In all of these cases, the affidavit set forth sufficient facts and circumstances to justify the broad language of the warrant.

The decided cases suggest certain minimum standards. (1) There must be named in the warrant a discrete category of items to be seized, with representative examples given. Failure to do this would raise problems not only of specificity, but of probable cause to issue the warrant in the first place. (2) Sufficient guidelines must be provided to remove discretion from the officers executing the warrant. This would be most troublesome in the case of documents, but at least there must be probable cause to believe that the documents exist and that they are in the place to be searched.

■ Even if the items in question were not covered by the warrant, they might be seized in connection with the execution of the search warrant if they had "a nexus with the crime under investigation", United States v. Kane, 450 F.2d 77 (5th Cir. 1971), or bore a "reasonable relation to the purpose of the search", Mesmer v. United States, 405 F.2d 316 (10th Cir. 1969), accord, United States v. Cook, 432 F.2d 1093 (7th Cir. 1970), or constitute means or instrumentalities of other crime, United States v. Alloway, 397 F.2d 105 (6th Cir. 1968), or evidence of other crimes, Anglin v. Director, 439 F.2d 1342 (4th Cir. 1971).

The Ninth Circuit permits similar seizures incident to a valid search. United States v. Honore, *supra* (means and instrumentalities of a separate crime), Woo Lai Chun v. United States, 274 F.2d 708 (9th Cir. 1960) ("closely related" items), Louis v. United States, 426 F.2d 1398 (9th Cir. 1970) ("reasonably related" items).

■ On the other hand, when the purposes of the warrant have been carried out, the authority to search is at an end. United States v. Highfill, 334 F.Supp. 700 (E.D.Ark.1971).

■ The items in question not being "in plain view" of the searching officers during their search for the contraband, and the entire mail package, contraband, container, and wrappings, having been recovered, no further search was authorized.

### *Motion for Separate Counts and Separate Trial*

Defendant Jerrold Feldman's motion for a separate conspiracy count and a separate trial presents no special circumstances requiring attention.

### *Conclusion*

The Motions to Suppress are granted as to the following items: (a) receipts for three Western Union International telegrams dated October 23, 24, and 26, 1972, from Defendant Richard Feldman to Lynn Percifield, American Express, Amsterdam, Netherlands, containing instructions concerning the shipment of "cheese" to Mr. and Mrs. R. Cesario, (b) a United States Passport issued to Lynn Hollingsworth Percifield and showing that she had entered the Netherlands on October 21, 1972, and returned to the United States on October 27, 1972, (c) a yellow plastic bag identical to that used to wrap the hashish in the mail packages in question; and denied in all other respects.

The Motion for Separate Counts, for Separate Trial of Counts, and for Severance is denied.